UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ANGEL ARRIAGA, et al.,<br>Plaintiffs,<br><br>v.<br><br>NEW ENGLAND GAS COMPANY, an Unincorporated Division of SOUTHERN UNION COMPANY, CLEAN HARBORS ENVIRONMENTAL SERVICES, JASON SMITH and STEPHEN CARBERRY,<br>Defendants, | : | C.A. NO. 06-045T |

***PLAINTIFFS RESPONSE MEMORANDUM IN SUPPORT OF THEIR MOTION TO REMAND***

Now come the Plaintiffs, in the above-entitled matter, and submits this Response Memorandum in Support of their Motion to Remand.

***BACKGROUND***

Defendant NEGasCo. asserted to this Court in its Notice of Removal that "Defendants Smith and Carberry are incorrectly alleged to be citizens of Rhode Island". (See, Defendant's Notice of Removal, Paragraph 8). Subsequently, Plaintiffs filed their Motion to Remand and demonstrated with clear documentation that the evidence was correct.

In it's Memorandum in Support for Leave to Depose Mr. Smith, NEGasCo. asserted that "documentary evidence indicates that in 2005 Smith was a Massachusetts resident and NEGasCo's recent investigation shows that Smith's domicile at the time of the action was initiated was not 88 Cove Street as Plaintiffs contend." (See, Defendants Memorandum for Leave to Depose Jason Smith, pg 3). On March 1, 2006, Plaintiffs

counsel provided counsel for NEGasCo. an affidavit from Smith regarding his residence along with a letter requesting that in light of the above information NEGasCo. reconsider it's position. Nonetheless, Defendant, NEGasCo., refused to accept the factual documentation provided, a sworn affidavit and the representations of Counsel and continued this costly and time consuming quest.

Defendant NEGasCo. now states that they withdraw that part of the removal petition. NEGasCo. asserts that Plaintiffs are making "a transparent effort to defeat diversity jurisdiction", however, Plaintiffs suggest that the above record unquestionably demonstrates which party is truly making a "transparent effort" relating to jurisdiction.

***ARGUMENT***

Defendant, NEGasCo., must establish that there is no possibility that the Plaintiffs can state a cause of action against Smith or Carberry. It must carry its burden by clear and convincing evidence. See, *Gabrielle v. Allegro Resorts Hotels,* 210 F.Supp.2d 62 (D.R.I 2002). Plaintiffs contend that both Carberry and Smith are essential parties to this action and that the Complaint clearly states sufficient facts to support the claims against them.

The linchpin of the fraudulent joinder analysis is whether the joinder of the non-diverse party has a reasonable basis in law and fact. See, *Polyplastics, Inc. v. Tranconex, Inc.* 713 F.2d 875, (1st Cir. 1983). The facts alleged in the Complaint support the contention that these Defendants are proper parties.

***PUBLIC NUISANCE CLAIM***

Defendant's first contention is that Plaintiffs public nuisance claim is not sufficient because the cause of action does not state an interference with a public right. It goes on

to state that the harm was to Plaintiffs property, not property used in common by all residents of Pawtucket. (See, Defendants Memorandum pg. 6) Defendant seems to have misrepresented the law as it relates to public nuisance, as well as the facts of this case, and has created what appears to be an unworkable, tortured interpretation of existing case law.

If one accepts Defendants view, courts would be required to determine "public harm" versus "private harm" based on the number of persons harmed or the geographical proximity of harm. Defendant asserts, with no case law to support it, that in this case it needs to be "common by all residents of Pawtucket or any larger subdivision". (See pg. 6 of Defendants Memorandum) In short, it suggests that to sustain a public nuisance all or a "larger subdivision" of residents need to be harmed in the City of Pawtucket. This is a clear misinterpretation of law that borders on the absurd. Moreover, the facts of this case will show that this was not merely an issue of "private property rights" as Defendant suggests. After the spill, city streets were closed. Ten off site private homes were effected. Shea High School, Elizabeth Baldwin School and The University of Rhode Island were all tested for mercury.

In addition, Defendants' interpretation can not be reconciled with *Wood v. Picillo*, 443 A.2d 1244 (R.I. 1982) and *Hydro-Mfg., Inc. v. Kayser-Roth Corp.*, 640 A.2d 950 (R.I.1994). In *Wood*, Defendant appealed from a finding by a judge sitting without a jury that Defendants created and maintained a public and private nuisance by maintaining a chemical dump and by dumping chemicals into three rivers that flowed down stream affecting a neighbor's property.

Justice Weisberger wrote the opinion and citing *Braun v. Iannotti,* 54 R.I. 469, 175 A. 656 (1934) he reiterated:

> *"In cases of damages by nuisance it is considered that the injurious consequences resulting from the nuisance, rather than the act which produces the nuisance, is the cause of action"*. Id at 1248. (Emphasis added.)

He further wrote:

> *"The Picillos' neighbors have displayed physical symptoms of exposure to toxic chemicals and have been restricted in the reasonable use of their property"... There was ample evidence to support the finding of substantial injury implicit in the trial justice's finding of both a public and private nuisance."* Id at1248 (Emphasis added).

In *Wood* there was no discussion of "public harm" to a city or a larger subdivision. In *Hydro-mfg., Inc.* the issue was whether a current owner of a property can maintain an action against a prior owner of the same property. *Hydro-Mfg., Inc.* never held that cities or large subdivisions have to be harmed.

Plaintiffs interpret these cases differently. They interpret these cases to mean that private individuals may have standing to bring a cause of action in public nuisance if they have special damages that result from the exercise of a right common to the general public. In other words, merely because there is a common right violated does not necessarily mean that there is a cause of action, unless there are special damages resulting from the nuisance. That is consistent with what our Supreme Court has said. *See, Hydro-Mfg., Inc.* at 958.

It is agreed that to have standing, there must be an unreasonable interference with a <u>right common</u> to the general public. *See, Hydro-Mfg, Inc* at 958 and *Radigan v. W.J. Halloran Co.*, 97 R.I. 122, A.2d 160 (1963). In this case that right is the ability to be

free from mercury poisoning, which all the public has. It does not mean, as Defendant suggests, that entire cities or large subdivisions of cities have to be effected to maintain this cause of action. No case law supports this distressed view of nuisance law in Rhode Island.

The Complaint in the case at bar specifically states that Plaintiffs have suffered special and peculiar harm of a kind different from that suffered by others, in that their health has already been injured, their properties already been damaged. (See Complaint, Paragraph 36). It is axiomatic that these Plaintiffs have the same rights common to the public not to be poisoned by mercury. They have standing because they have been and it has resulted in injury.

***PRIVATE NUISANCE***

Defendant, NEGasCo., writes two paragraphs relating to this count and asserts that there is no cause of action because the spilling of the mercury did not arise from the use of Smith's and Carberry's own property. Under Defendants' analysis in order to sustain an action in private nuisance a Plaintiff would have to prove that the harmful substance was produced and/or maintained at a defendant- neighbors' property. Merely bringing the toxic substance into Carberrys or Smiths apartments is not enough. This view is in complete opposition of current Rhode Island case law. *See, Picillo* at 1248.

It seems as though Defendant NEGasCo. is stating that those who transport toxic substances, as opposed to producing it in their homes is not actionable. *See, West v. National Mines Corp.*, 168 W.Va 578, 285 S.E. 2d 670 (1981). (The use of a public road to transport coal created a nuisance). *See, Wales Trucking Company v. Stallcup*, 465 S.W. 2d 444 (Tex App. 1971). (Trucking Company that created dust on a public

roadway constituted a nuisance). The transportation of mercury by these Defendants to their homes and the subsequent conduct does constitute a nuisance.

The facts outlined in the Complaint allege that Carberry and Smith took the mercury back to their homes at the complex and it was there that it was spilled. (See, Complaint at Paragraphs 15-18). That is the basis for the claim. Once again, actionable nuisance is not based on the conduct, but is based on the injurious consequences to the neighbors. It was Carberry's and Smith's conduct at their homes that resulted in injury to their neighbors. Consequently, there is a valid count for private nuisance. See, *Picillo* at 1248.

Defendant has failed to establish by clear and convincing evidence that it is not possible to maintain a private nuisance action.

***<u>THE RHODE ISLAND HAZARDOUS WASTE MANAGEMENT ACT</u>***

The facts further support an allegation that Carberry and Smith violated RIGL 23-19.1-22, the Hazardous Waste Management Act. The only issue relating to that count is whether there is a private cause of action which has yet to be determined by our Supreme Court. Despite the clear rule stating that unpublished orders shall not be cited by counsel in their briefs and such orders have no precedential effect, (See, R.I. Sup. Ct. Art I, R. 16(j)), Defendant, NEGasCo has decided to blatantly violate the rule and cite case law in it's brief to support it's contention that there is no private cause of action.

Although this Court may use state court decisions when deciding issues, one has to be mindful that this issue is fraudulent joinder. As such, the Court must look to see if it is at all possible to maintain this action in state court. Without a decision by our Supreme Court on the issue, it remains possible. As a result, the contention by Defendant

that there is no private cause of action as a matter of law has not been proven by clear and convincing evidence.

***DEFENDANTS' CONTENTION THAT PLAINTIFFS COULD NOT OBJECTIVELY INTEND TO PROSECUTE THIS ACTION AGAINST SMITH AND CARBERRY***

Defendant contends that these Defendants were named to this suit "in an unabashed attempt to defeat removal". This is simply not so. NEGasCo. has not relied on any facts to support such a contention.

The failure to name these Defendants is tantamount to malpractice. These two defendants were actively involved and in fact started this ongoing health hazard to dozens of people. They broke and entered into a facility and took mercury. They then brought the mercury back to their homes and subsequently spilled it. They and others tracked it throughout the complex and into the community at large. Why would Plaintiffs allow these Defendants to escape liability? Moreover, how could such facts appear as a "sham" and how can these Defendants appear as "straw Defendants"? During the course of a trial without Smith and Carberry there is little question that the jurors would inquire as to their involvement. There is a good faith basis to prosecute these active participants in this ongoing health hazard.

Defendant, NEGasCo., argues that Smith and Carberry are judgment proof and therefore, this is fraudulent joinder. Once again this in not supported by existing case law. *See, DiNatale v Subaru of America*, 624 F.Supp 340 (E.D. Mich 1985) citing Hart and Wechsler, The Federal Courts and The Federal System 1215 (2d ed. 1973). (The mere purpose to defeat removal did not constitute fraud, even though the resident defendant was known to be judgment-proof.) The fact that one Defendant is rich and

another poor is of no consequence. *See, Chicago, R. I. & P. R. Co. v. Schwyhart,* 227 U.S. 184 (1913).

In addition, at the time of filing this suit, January 20, 2006, no one knew the financial status of any of the Defendants. Defendant is basing it's argument of "judgment proof defendants" from a March 9, 2006 deposition. This time frame alone demonstrates that there was no fraudulent joinder. This argument is nothing more than a red herring.

Finally, from a practical point of view it simply is not in the Plaintiffs best interest to fail to name two primary participants merely because their current economic position is questionable. If judgment is entered against one or both of these individuals and they have gained additional wealth, then these Plaintiffs will do everything legally possible to obtain those funds. Such an option would not be available had Plaintiffs merely failed to add Carberry and Smith because currently they have few assets.

***DEFENDANT SMITH HAS FAILED TO CONSENT TO REMOVAL***

Removal of civil actions is governed by 28 USC 1446(b), which provides, in relevant part:

> "The notice of removal of a civil action or proceeding shall be filed within thirty (30) days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty (30) days after the service of summons upon defendant if such initial pleading has then been filed in court and is not required to be served on defendant, whichever period is shorter."

All defendants must join in the removal petition. See, *Gableman v. Peoria, D.&E. Ry. Co.*, 179 U.S. 335 (1900). The consent to removal must be manifested clearly and unequivocally to the Court within the thirty (30) day period prescribed by 1446(b). See, *Sansone v. Morton Mach. Works, Inc.*, 2002 U.S. Dist. LEXIS 27074 (D.R.I., 2002)

citing *Henderson v. Holmes*, 920 F. Supp. 1184 (D. Kan. 1996). It is incumbent on each defendant to independently notify the court of it's consent.

In *Sansone,* this Court held that such a "bright line" rule helps conserve judicial resources by eliminating motions to remand prompted by uncertainty as to whether all Defendants have consented to the removal, as well as numerous evidentiary hearings that, otherwise, would be required to determine whether all Defendants really did consent to removal within the thirty (30) day period.

In this case, Defendant Smith had up to and including March 6, 2006 to file his consent. He did not. There can be no assumption as to his consent as he has yet to file his Answer. See, *Hernandez v. Six Flags Magic Mountain, Inc.*, 688 F. Supp. 560 (C.D. Cal. 1988). Moreover, NEGasCo. had an opportunity to set the deposition of Mr. Smith down before the thirty (30) day period and inquire of the defendant at his deposition as to the issue of consent. It did not. 28 U.S.C.S 1446(b) does not exclude pro se Defendants from this "bright line" rule. Merely because Mr. Smith has not retained counsel to date, does not mean that he is free from complying with the rule as outlined in *Sansone.* In fact, a ruling allowing an exception for pro se defendants would allow Defendants to thwart the entire basis of the thirty (30) day rule by simply having their counsel file entries after the thirty day period.

All parties were aware that Smith was served on February 2, 2006. Subsequently, on February 17, 2006, Defendant NEGasCo moved for leave to depose Smith and sought a continuance. That request was within the 30 day period. An affidavit was signed by Smith, stating his current address and given to counsel for the Defendant on February 28,

2006, still within the 30 day period. Despite knowing the actual address of Smith, Defendant NEGasCo never made any attempt to obtain Smith's consent for removal.

Defendant NEGasCo at no time in its notice of removal or anytime after February 6, 2006 attempted to determine from Defendant Smith if he consented. Nor did it schedule the deposition of Smith within the thirty day period, which it could have. Nor did it inquire of Smith at his deposition if he consented. NEGasCo had several opportunities to seek consent within the thirty day period and for reasons known only to the Defendant, did not. Once the period ran, the issue became ripe and is incorporated into this reply memorandum. Based on the lack of consent of removal by Mr. Smith the removal procedure is defective and this Court should grant the Motion to Remand.

PLAINTIFFS,

By their Attorneys,

**LAW OFFICE OF MARK DANA, P.C.**

Mark W. Dana, Esquire #4150
536 Atwells Avenue
Providence, RI 02909
(401) 454-1222 – Tel.
(401) 490-4834 – Fax

**D'AMICO • BURCHFIELD, LLP**

Robert A. D'Amico, II, Esquire #4593
536 Atwells Avenue
Providence, RI 02909
(401) 454-1212 - Tel
(401) 490-4809 - Fax

***CERTIFICATION***

I hereby certify that I mailed a true and accurate copy of the within ***MEMORANDUM*** to the individuals named below via first-class mail, postage prepaid, on this 28th day of March 2006:

***Mark P. Dolan, Esq.***
***RICE, DOLAN & KERSHAW***
***170 Westminster Street***
***Suite 900***
***Providence, RI 02903***

***Gerald J. Petros, Esq.***
***HINCKLEY, ALLEN & SNYDER, LLP***
***1500 Fleet Center***
***Providence, RI 02903***

***Michael J. Smith, Esq.***
***Bonner Kiernan Trebach & Crociata, LLP***
***One Liberty Square***
***Boston, MA 02109***

***Jason Smith***
***40 Arlington Street Apt 6***
***Warren, RI 02885***

[signature]
of LAW OFFICE OF MARK DANA, P.C.