UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

ANGEL ARRIAGA, et al.

Plaintiffs,

v. C.A. No. 06-45T

NEW ENGLAND GAS COMPANY, an unincorporated
Division of SOUTHERN UNION COMPANY,
CLEAN HARBORS ENVIRONMENTAL SERVICES,
JASON SMITH and STEPHEN CARBERRY

Defendants

**OPINION AND ORDER**

**Introduction**

The plaintiffs, who reside in or near the Lawn Terrace Apartments in Pawtucket, Rhode Island, brought this action seeking equitable relief and monetary damages for what they allege is contamination of their residences by mercury belonging to the defendant, New England Gas Company ("NE Gas"), an unincorporated division of Southern Union Company, a Delaware Corporation ("Southern Union").

Suit was brought in the Rhode Island Superior Court but NE Gas, with the consent of co-defendant Clean Harbors Environmental Services ("Clean Harbors"), removed the case on diversity grounds.

The plaintiffs have moved to remand the case to state court on the ground that complete diversity is lacking because Jason Smith ("Smith") and Stephan Carberry ("Carberry"), the other two defendants, are Rhode Island residents. NE Gas and Clean Harbors argue that diversity jurisdiction exists because Smith and Carberry have been fraudulently joined.

For the reasons hereinafter stated, the motion to remand is denied and, pursuant to Fed. R. Civ. P. 21, Smith and Carberry are dropped as parties. See Newman-Green, Inc. v. Alfonso-Larrain, 490 U.S. 826, 832, 109 S.Ct. 2218, 2222, 104 L.Ed.2d 893 (1989).

## Background Facts

The complaint alleges that, in October 2004, Smith and Carberry stole mercury from an unsecured and unlicensed storage facility owned by NE Gas and that they spilled it in the parking lot of the Lawn Terrace Apartments, where Smith lived. Mercury, then, was tracked into some of the apartments and nearby residences occupied by the plaintiffs.

Smith and Carberry pled nolo contendere in state court to charges of conspiracy and breaking and entering and they were placed on probation. It appears that Carberry later was charged with violating the conditions of his probation and has been committed for failure to post bail.

NE Gas retained Clean Harbors to clean up the contamination

but the complaint alleges that not all of the mercury has been removed[1] and it seeks injunctive relief and damages from NE Gas and Clean Harbors under theories of negligence, public and private nuisance, strict liability and violation of the Rhode Island Hazardous Waste Management Act ("HWMA"), R.I. Gen. Laws § 23-19.1-22 (1956). However, Smith and Carberry are named only in the nuisance and HWMA counts.

NE Gas claims that this Court has diversity jurisdiction because Smith and Carberry were fraudulently joined and, therefore, their citizenship should be disregarded. More specifically, NE Gas argues that (1) the complaint does not state any viable cause of action against Smith and Carberry, and (2) the plaintiffs do not intend to prosecute their claims against Smith and Carberry because both of them are indigent.

## Analysis

One of the consequences of our federal system is that, in some cases, it requires a considerable expenditure of time, effort and resources simply to determine whether an action properly belongs in state or federal court. This case is an example because, in deciding whether the motion to remand should be granted, this Court

[1]NE Gas states that it spent $6 Million to clean up the site and compensate the plaintiffs for their losses and that the Rhode Island Department of Health and the Rhode Island Department of Environmental Management have issued "clean bills of health."

must plumb the murky depths of the doctrine of fraudulent joinder.

I. The Doctrine of Fraudulent Joinder

The doctrine of fraudulent joinder is intended to preserve a defendant's right to remove a case to federal court when there is complete diversity of citizenship between the parties. As the Supreme Court has said, a plaintiff's assertion of a claim against a defendant who is a citizen of the same state amounts to fraudulent joinder when it is done "without any purpose to prosecute the action in good faith as against him and with the purpose of fraudulently defeating the [defendant's] right of removal." Wilson v. Republic Iron & Steel, 257 U.S. 92, 98, 42 S. Ct. 35, 37-38, 66 L. Ed. 144 (1921). However, the term "fraudulent joinder" is something of a misnomer because it does not necessarily require a removing defendant to "prove that the plaintiff intended to mislead or deceive." Lawrence Builders Inc. v. Kolodner, 414 F. Supp. 2d 134, 137 (D.R.I 2006).

The First Circuit has not yet prescribed the applicable standard for determining, in a particular case, whether joinder of a non-diverse defendant is fraudulent. Moreover, there is a lack of clarity and uniformity in the standards applied by other courts. In the words of the Fifth Circuit, "[n]either our circuit nor other circuits have been clear in describing the fraudulent joinder standard. The test has been stated by this court in various terms, even within the same opinion." Travis v. Irby, 326 F.3d 644, 647

(5th Cir. 2003) (discussing the variety of standards adopted by the various circuits).

Generally, courts agree that joinder is fraudulent where there has been outright fraud in alleging jurisdictional facts or where there is no basis for the plaintiff's claim. Smallwood v. Illinois Cent. R. R. Co., 385 F.3d 568, 573 (5th Cir. 2004)(en banc) cert. denied, 544 U.S. 922, 125 S. Ct. 1825, 161 L.Ed.2d 755 (2005)(recognizing "two ways to establish improper joinder... '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'"); Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 207 (2d Cir. 2001)(joinder is fraudulent if " there has been outright fraud committed in the plaintiff's pleadings, or there is no possibility, based on the pleadings, that the plaintiff can state a cause of action against the non-diverse defendant in state court."); Lawrence Builders Inc. v. Kolodner, 414 F. Supp. 2d at 137 (fraudulent joinder doctrine applies to "outright fraud in plaintiff's recitation of jurisdictional facts" and when there is "no possibility that plaintiff would be able to establish a cause of action against the non-diverse defendant in state court.").

Also, it is well established that a removing defendant has the burden of proving fraudulent joinder "by clear and convincing evidence," Whitaker v. Am. Telecasting, Inc., 261 F.3d at 207;

Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 461 (2d Cir. 1998); In re Pharm. Indus. Average Wholesale Litig., 431 F. Supp. 2d 109, 117 (D. Mass. 2006); Gabrielle v. Allegro Resorts Hotels, 210 F. Supp. 2d 62, 67 (D.R.I. 2002); Rinehart v. Consol. Coal Co., 660 F. Supp. 1140, 1141 (N.D. W.Va. 1987), and that disputed questions of fact and ambiguities with respect to controlling law must be resolved in the plaintiff's favor. Travis v. Irby, 326 F.3d at 649; Schwenn v. Sears, Roebuck, & Co., 822 F. Supp. 1453, 1455 (D. Minn. 1993); Rinehart v. Consol. Coal Co., 660 F. Supp. at 1142.

Unfortunately, there does not seem to be any consensus regarding the test to be applied in determining whether there is a sufficient basis for a plaintiff's claim against a non-diverse defendant or, if so, whether joinder of that defendant, nevertheless, may be deemed fraudulent on the ground that the claim was asserted in "bad faith."

In this case, the removing defendants do not argue that the complaint fraudulently alleges any jurisdictional facts. Nor do the defendants argue that the plaintiffs have fraudulently misrepresented or omitted any facts bearing on the validity of their claims against Smith and/or Carberry. Rather, the removing defendants argue that there is no basis under state law for the claims asserted against Smith and/or Carberry and that the plaintiffs have no good faith intention of prosecuting those claims.

II. Fraudulent Joinder - The Legal Basis for a Claim

In deciding whether joinder is fraudulent on the ground that there is no basis for the claims asserted against a non-diverse defendant, some courts require the removing defendant to demonstrate "no possibility, based on the pleadings, that the plaintiff can state a cause of action against the non-diverse defendant in state court." Whitaker v. Am. Telecasting, Inc., 261 F.3d at 207 (emphasis added); accord Lawrence Builders v. Kolodner, 414 F. Supp. 2d at 137 (fraudulent joinder occurs where there is "no possibility that the plaintiff would be able to establish a cause of action against the non-diverse defendants in state court"); Schwenn v. Sears, Roebuck & Co., 822 F. Supp. at 1455 (the test is "whether there is a possibility that a state court would find that the complaint states a cause of action against the resident defendant"); Conk v. Richards & O'Neil, LLP, 77 F. Supp.2d 956, 960 (S.D. Ind. 1999) (fraudulent joinder occurs "when there is no possibility that a plaintiff can state a cause of action against nondiverse defendants in state court"); In re Pharm. Indust. Average Wholesale Litig., 431 F. Supp. 2d at 118 (fraudulent joinder when plaintiff "cannot establish the possibility of a cause of action against the joined party").

Other courts have described the test as "whether there is any reasonable basis for predicting" that the plaintiff may prevail under state law. Griggs v. State Farm Lloyds, 181 F.3d 694, 699

(5th Cir. 1999)(emphasis added); see Travis v. Irby, 326 F.3d at 647 ("there must at least be a reasonable basis for predicting that state law would allow recovery in order to preclude a finding of fraudulent joinder"); Krueger v. R.J. Reynolds Tobacco Co. 2006 WL 39095 at *3 (S.D. Ill. Jan. 06, 2006)(quoting Poulos v. Naas Food, Inc., 959 F.2d 69, 73 (7th Cir. 1992)) ("'At the point of decision [of whether joinder was fraudulent] the federal court must engage in an act of prediction: is there any reasonable possibility that a state court would rule against the non-diverse defendant?'"); Rinehart v. Consol. Coal Co., 660 F. Supp. at 1141 ("The test for fraudulent joinder is whether there is an arguably reasonable basis for predicting that state law might impose liability on the facts involved"). Still other courts have treated the two tests as synonymous. Smallwood v. Illinois Cent. R. R. Co., 385 F.3d at 573.[2]

Close examination reveals that these differences are more apparent than real and that the Court's task is to determine whether it is reasonable to expect that the plaintiff may succeed on its claim. As the 8th Circuit stated in Filla v. Norfolk S. Ry. Co., 336 F.3d 806, 810 (8th Cir. 2003), "despite the semantical differences, there is a common thread in the legal fabric guiding

---

[2]In Smallwood, the Court described the defendant's burden as showing that "there is no possibility of recovery" which the Court equated with a showing that "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover." [Emphases added].

fraudulent joinder review" which is "the reasonableness of the basis underlying the state claim." (emphasis added). See Badon v. RJR Nabisco Inc., 236 F.3d 282, 286 n. 4 (5th Cir. 2000) (rejecting argument that a "mere theoretical possibility of recovery under local law - no matter how remote or fanciful - suffices to preclude removal").

In making that determination, a court must bear in mind that "the merits of an action are distinct from the jurisdictional issues." Schwenn v. Sears, Roebuck & Co., 822 F. Supp. at 1455; accord Reeb v. Walmart Stores, Inc., 902 F. Supp. 185, 188 (E.D. Mo. 1995). Therefore, the Court's task is not to decide the case, but, rather, it is to determine whether the plaintiff's claims against the non-diverse defendants have such little prospect of success that their joinder was improper. Smallwood v. Illinois Cent. R. R. Co., 385 F.3d at 573-74. See, Conk v. Richards & O'Neil LLP, 77 F. Supp.2d at 961 (recognizing "distinction between dismissal for failing to state a claim and dismissal for lack of subject matter jurisdiction"). Put another way, the relevant inquiry is whether there is a sufficiently reasonable basis for the claim to preclude a finding that joinder amounts to nothing more than a means to prevent removal. Wilson v. Republic & Steel Co., 257 U.S. at 97, 42 S.Ct. at 37, 66 L.Ed. 144.

III. Bad Faith

At first blush, courts seem to be hopelessly divided as to

whether the fact that there is a reasonable basis for a plaintiff's claim against a non-diverse defendant precludes a finding of fraudulent joinder or whether fraudulent joinder, nevertheless, may be found if the claim is asserted in "bad faith." Thus, some courts have said that, when there is a reasonable basis for the claim, joinder is not fraudulent, e.g. Filla v. Norfolk S. Ry. Co., 336 F.3d at 810 ("if there is a reasonable basis in fact and law supporting the claim, the claim is not fraudulent"), or that a plaintiff's motive in asserting the claim is immaterial. See Mecom v. Fitzsimmons Drilling Co., 284 U.S. 183, 189, 52 S. Ct 84, 87, 76 L.Ed. 233 (1931); Travis v. Irby, 326 F.3d at 647. Other courts, though, have recognized the absence of a "'real intention in good faith to prosecute the action against the [non-diverse] defendant'" as a ground for finding fraudulent joinder even where there is some basis for the claims asserted. E.g. Boyer v. Snap-on Tools Corp., 913 F.2d 108, 111-12 (3d Cir. 1990), cert. denied, 498 U.S. 1085, 111 S.Ct. 959, 112 L.Ed.2d 1046 (1991)(quoting Abels v. State Farm Fire & Cas. Co., 770 F.2d 26, 32 (3d Cir. 1985), cert. dismissed sub nom Am. Standard v. Steel Valley Auth., 484 U.S. 1021, 108 S.Ct. 739, 98 L. Ed. 756 (1988)); Schwenn v. Sears, Roebuck & Co., 822 F. Supp. at 1455 (joinder is fraudulent "where the plaintiff has no real intention of prosecuting the action against the resident defendant").

However, once again, the conflict seems to be more apparent

than real. The cases can be reconciled by recognizing the distinction between a plaintiff's motive for joining a non-diverse defendant and the plaintiff's belief regarding the basis for his claim or his intent with respect to prosecuting the claim.

Accordingly, the principle that may be distilled from these cases is that where there is a reasonable basis for a claim asserted against a non-diverse defendant and the plaintiff has a good faith intent to pursue the claim, joinder is not rendered fraudulent simply because the desire to prevent removal played a role in the decision to join the defendant. Mecom v. Fitzsimmons Drilling Co., 284 U.S. at 189, 52 S. Ct. at 87, 76 L.Ed. 233 ("[T]he motive of a plaintiff in joining defendants is immaterial, provided there is in good faith a cause of action against those joined."); Travis v. Irby, 326 F.3d at 647 (If there is a reasonable basis for the plaintiff's claim, "a good-faith assertion of such an expectancy in a state court is not a sham, is not colorable and is not fraudulent in fact or in law."). Conversely, lack of a good-faith intent to prosecute a claim asserted against a non-diverse defendant may make joinder of that defendant fraudulent even though the claim is well founded. Boyer v. Snap-on Tools Corp., 913 F.2d at 111-12; Reeb v. Wal-Mart Stores, Inc., 902 F. Supp. at 187; Schwenn v. Sears, Roebuck & Co., 822 F. Supp. at 1455.

IV. The Procedural Steps

The procedure for deciding whether there has been fraudulent joinder begins with an examination of the verified removal petition. If unchallenged, the allegations in the petition must be accepted as true but, if they are challenged by a motion to remand, the issues raised must be heard and determined by the district court. Wilson v. Republic Iron & Steel, 257 U.S. at 97, 42 S. Ct. at 37, 66 L. Ed. 144.

The procedure to be followed in resolving disputed issues depends in part on the grounds for claiming fraudulent joinder. Where it is alleged that the plaintiff fraudulently misrepresented or omitted jurisdictional facts such as the citizenship of the parties or the amount in controversy, an evidentiary hearing may be required. B., Inc. v. Miller Brewing Co., 663 F.2d 545, 551 n. 14 (5th Cir. 1981) (Evidentiary hearing appropriate to resolve "limited questions of jurisdictional fact"). An evidentiary hearing also may be required to determine whether the plaintiff lacks any good-faith intent to prosecute his claims against the non-diverse defendant.

When the allegation of fraudulent joinder rests on the argument that there is no reasonable basis for the plaintiff's claim against the non-diverse defendant, the procedure to be followed is not as clear. Decisions regarding the proper standard to apply run the gamut from a summary judgment standard in which

documents outside the pleadings are considered, e.g. Reeb v. Wal-Mart Stores, Inc., 902 F. Supp. at 187 n.2, to a Rule 12(b)(6) standard that considers whether the complaint, on its face, states a claim upon which relief may be granted, e.g. id. at 187 n.3; Smallwood v. Illinois Cent. R. R. Co., 385 F.3d at 573; Rich v. Bud's Boat Rentals, Inc., Not Reported in F. Supp. , 1997 WL 785668 at *2 (E.D.La. Dec. 18, 1997), to whether there is a reasonable possibility that the plaintiff has asserted a valid claim. Schwenn v. Sears, Roebuck & Co., 822 F. Supp. at 1454; see Reeb v. Wal-Mart Stores, Inc., 902 F. Supp. at 187 (collecting cases).

The threshold issue is whether and to what extent it is permissible to "pierce the pleadings." Most courts have limited their consideration of materials outside the pleadings to information indicating that the plaintiff "has misstated or omitted discrete facts that would determine the propriety of joinder," Smallwood v. Illinois Cent. R.R. Co., 385 F.3d at 573, or that "establish[es] facts supporting the claims" as opposed to resolving the merits of the claims. Reeb v. Wal-Mart Stores, Inc., 902 F. Supp. at 188; see Boyer v. Snap-on Tools Corp., 913 F.2d at 112 (drawing distinction between such inquiry and a summary judgment-type inquiry).

Whatever approach is taken, it must be borne in mind that the purpose is not to adjudicate the case but, merely, to determine whether the court has jurisdiction. Accordingly, a federal court

should refrain from deciding unresolved questions of state law. Filla v. Norfolk S. Ry. Co., 336 F.3d at 810-11 (in determining fraudulent joinder claim, court need not settle state law ambiguity).

V. Assessment of the Plaintiffs' Claims

As already noted, the only claims asserted against Smith and Carberry are for public nuisance, private nuisance and violation of Rhode Island's Hazardous Waste Management Act (R.I. Gen. Laws § 23-19.1-22).

It is clear that the plaintiffs cannot succeed on their private nuisance claim because, under Rhode Island law, the plaintiffs must show interference with the use of their property that was caused by the defendants' unreasonable use of their own property. Hydro-Manufacturing, Inc. v. Kayser-Roth Corp., 640 A.2d 950, 957-58 (R.I. 1994); see Corvello v. New England Gas Co., Inc., 460 F. Supp.2d 314, 324-25 (D.R.I. 2006). Here, there is no allegation that the mercury spill resulted from some activity Smith and Carberry were conducting on their property. On the contrary, the allegations are that Smith and Carberry merely spilled mercury that they had stolen from NE Gas's storage facility.

It is equally clear that the plaintiffs cannot succeed on their claim under the HWMA because that statute does not provide for a private right of action. See Stoutenburgh v. Dierauf, No. 90-194- Appeal (R.I. Dec. 13, 1990); Corvello v. New England Gas

Co., Inc., 460 F. Supp.2d at 327-28.

It is less clear whether the plaintiffs may have a state law claim against Smith and Carberry for public nuisance. Under Rhode Island law, a plaintiff asserting a public nuisance claim must establish that a defendant unreasonably interfered with a "right common to the general public" and that the plaintiff sustained "special damages" as a result of the interference. Hydro-Manufacturing, 640 A.2d at 957-58 (citing Iafrate v. Ramsden, 96 R.I. 216, 190 A.2d 473, 476 (1963)); Clark v. Peckham, 10 R.I. 35 (1891); see Corvello v. New England Gas, 460 F. Supp. 2d. at 324.

The requirement of interference with a right "common to the general public" provides a basis for distinguishing the almost absolute liability imposed by the doctrine of public nuisance from the fault based liability imposed by traditional tort law principles or even from the strict liability imposed for engaging in unreasonably dangerous activities. A right "common to the general public" has been described as a collective right that is shared by everyone in the community as opposed to a right that is possessed only by certain members of the public. See Restatement of Torts 821 cmt. g. In general, it refers to the interference with "the health, safety, peace, comfort or convenience of the general community." Citizens for Pres. of Waterman Lake v. Davis, 420 A.2d 53, 59 (R.I. 1980); see Corvello v. New England Gas, 460 F. Supp. 2d at 324.

While a public nuisance may consist of an "'aggregation of private injuries [that] becomes so great and extensive as to constitute a public annoyance," Sullivan v. Am. Mfg. Co. of Massachusetts, 33 F.2d 690, 692 (4th Cir. 1929)(quoting Wesson v. Washburn Iron Co., 13 Allen 95, 90 Am. Dec. 181 (Mass. 1866)), interference with the private rights of a substantial number of individuals does not, by itself, amount to a public nuisance. See Corvello, 460 F. Supp. 2d at 324. There must be a showing that "the acts complained of interfered with [an] interest of plaintiffs common to the general public." Iafrate v. Ramsden, 190 A.2d at 476 (quoting Prosser). Otherwise, every claim involving harm to a group of individuals could be brought on a public nuisance theory thereby negating the principle that tort liability, generally, is based on fault. The distinction is illustrated by Prosser's example of a polluted stream that would be a private nuisance if it interferes only with the use and enjoyment of property belong to riparian owners, but would be a public nuisance if it kills all of the fish, thereby depriving the public of the right to fish in the stream. W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 90, at 645 (5th ed. 1984).

Satisfaction of the "special damages" requirement is what permits a private citizen to bring an action for public nuisance which, until recently, could be maintained only by a duly authorized representative of the public. Corvello, 460 F. Supp. 2d

at 323, citing Prosser. In order to establish "special damage", a private plaintiff must show that he has "'suffered harm of a kind different than that suffered by other members of the public exercising the right common to the general public that was the subject of interference.'" Hydro-Manufacturing, 640 A. 2d at 958 (quoting Restatement (Second) of Torts § 821C(1)). See Prosser §90, at 646 ("[a] private individual has no action for the invasion of the purely public right, unless his damage is in the same way to be distinguished from that sustained by other members of the general public."). It is not enough for a private plaintiff to show that he has suffered "the same kind of harm or interference but to a greater extent or degree" as other members of the public. Restatement (Second) of Torts § 821c cmt. b (1979). Rather, the plaintiff must show that the harm suffered is separate and distinct from the harm suffered by the general public. Hydro Manufacturing, 640 A.2d at 958.

Here, the complaint describes the property contaminated by the actions of Smith and Carberry as the Lawn Terrace Apartments and some nearby residences. During oral argument, plaintiffs' counsel represented that the nearby residences were five homes, some of which were "miles away," where mercury apparently had been tracked by persons visiting the apartment complex. Counsel also stated that some mercury testing was performed at the local high school but he candidly acknowledged that he had no evidence of mercury

contamination at the school. The failure to discover contamination at any location other than the Lawn Terrace Apartments and five other residences during the 2 1/2 years since the mercury was spilled indicates that any resulting harm has been sustained by residents of the apartment complex and a few of their guests and not by the general public.

Moreover, even if the alleged mercury contamination were sufficiently widespread to be viewed as a threat to the health of the general public, it does not appear that the plaintiffs have suffered "special damages" that are separate and distinct from those suffered by others. The harm is the effect of exposure to the mercury and the kind of harm would be the same for other members of the public as it would be for the plaintiffs. As already noted, the possibility that the <u>degree</u> of harm suffered by the plaintiffs might be greater than the degree of harm suffered by other members of the public would not establish that the plaintiffs' harm is separate and distinct.

In short, the plaintiffs may have a number of viable claims against Smith and Carberry, including claims for negligence and intentional torts, but there does not appear to be any reasonable possibility that the plaintiffs could prevail, in state court, on any of the claims that they have asserted against Smith and Carberry in this case.

Having decided that Smith and Carberry were improperly joined,

there is no need to decide whether the plaintiffs had a good faith intent to pursue the claims against Smith and Carberry. However, this Court would be remiss if it did not note that it accepts the explanation by plaintiffs' counsel of the reasons why Carberry still has not been served and Smith has not been defaulted even though he was served long ago, as well as counsel's representation that he intended, in good faith, to pursue the claims against these defendants.

Since Smith and Carberry have been improperly joined, they should be dropped pursuant to Fed. R. Civ. P. 21. See Newman-Green, Inc. v. Alfonso-Larrain, 490 U.S. 826, 832, 109 S.Ct. 2218, 2222, 104 L.Ed.2d 893 (1989).

**Conclusion**

For all of the foregoing reasons, the plaintiffs' motion to remand is denied and defendants Smith and Carberry are dropped as parties.

IT IS SO ORDERED.

Ernest C. Torres

Ernest C. Torres
U.S. District Court Judge

Date: April 16, 2007