**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

ANGEL ARRIAGA, et al.,

Plaintiffs,

vs.

NEW ENGLAND GAS COMPANY, an Unincorporated Division of SOUTHERN UNION COMPANY, CLEAN HARBORS ENVIRONMENTAL SERVICES, JASON SMITH and STEPHEN CARBERRY,

Defendants.

**C.A. No. 06-45T**

**DEFENDANT NEW ENGLAND GAS COMPANY'S**
**MOTION TO STAY**

New England Gas Company ("NEGasCo"), an unincorporated division of Southern Union Company (individually and collectively "Southern Union") moves to stay this action until completion of *United States v. Southern Union Company*, CR 07-134T (D R.I.), a parallel criminal proceeding wherein Southern Union has been indicted for the alleged improper storage of mercury and for failing to report immediately a mercury release at its Tidewater facility in Pawtucket, Rhode Island. In support of this motion, NEGasCo, relies on the memorandum of law submitted herewith.

NEW ENGLAND GAS COMPANY, INC.

/s/ Gerald J. Petros

Gerald J. Petros (#2931)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
Tel. (401) 274-2000
Fax (401) 277-9600
gpetros@haslaw.com

Mark P. Dolan (#3280)
Rice, Dolan & Kershaw
72 Pine Street, Suite 300
Providence, RI 02903
(401) 272-8800

Dated: February 22, 2008

**CERTIFICATION**

To:

Mark W. Dana, Esq.
Robert A. D'Amico, Esq.
Patrick F. Dowling, Esq.
536 Atwells Avenue
Providence, RI 02909

Michael Smith, Esq.
Bonner Kiernan Trebach & Crociata LLP
55 Pine Street
Providence, RI 02903

I hereby certify that on February 22, 2008, a copy of the foregoing Motion to Stay was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Gerald J. Petros

*873817v1 (14015/127589)*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| ANGEL ARRIAGA, et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| vs. | : | |
| | : | |
| NEW ENGLAND GAS COMPANY, an Unincorporated Division of SOUTHERN UNION COMPANY, CLEAN HARBORS ENVIRONMENTAL SERVICES, JASON SMITH and STEPHEN CARBERRY, | : | **C.A. No. 06-45T** |
| | : | |
| Defendants. | : | |

**DEFENDANT NEW ENGLAND GAS COMPANY'S**
**MEMORADUM OF LAW IN SUPPORT OF ITS MOTION TO STAY**

New England Gas Company ("NEGasCo"), an unincorporated division of Southern Union Company (individually and collectively "Southern Union") submits this memorandum of law in support of its motion to stay this action until completion of *United States v. Southern Union Company*, CR 07-134T (D R.I.), a parallel criminal proceeding wherein Southern Union has been indicted for the alleged improper storage of mercury and for failing to report immediately a mercury release at its Tidewater facility in Pawtucket, Rhode Island. This case presents circumstances that, in the interest of justice, warrant a stay.

## BACKGROUND

In this matter, plaintiffs seek to recover money damages as a result of the alleged contamination of an apartment complex where they either currently reside or once resided in Pawtucket, Rhode Island. Plaintiffs allege that perpetrators Stephen Carberry ("Carberry") and Jason Smith ("Smith") "gained access" to Southern Union's Tidewater facility – a few blocks from plaintiffs' apartment complex – removed mercury stored at that facility, and brought it back to plaintiffs' apartment complex where they "spilled" it in the parking lot and "tracked" it into

plaintiffs' apartments. *See* Amended Complaint (“Cplt.”) at ¶¶ 12-16. Plaintiffs further claim that the storage of the mercury at the Tidewater facility was negligent and in violation of state and federal law because, among other reasons, Tidewater was "not a secured storage unit"; Southern Union did not notify federal and state officials that mercury was stored at Tidewater; and Southern Union did not "obtain or seek a permit for the storage of mercury pursuant to state or [f]ederal law." *Id*. at ¶¶ 9, 11 & 18.[1] Indeed, at the Rule 16 conference and in their Rule 16 statement, plaintiffs informed the Court and Southern Union that they intend to rely in part on the same claims and statutes raised in the criminal indictment – the improper storage of mercury and the failure to make timely notification – purportedly to prove their claim against Southern Union.

On October 16, 2007, a Grand Jury in the District of Rhode Island returned an indictment charging Southern Union with two counts of alleged violations of the Resource Conservation and Recovery Act ("RCRA") relating to Southern Union's storage of mercury at Tidewater facility – the same mercury that is the subject of plaintiffs' Amended Complaint.[2] Specifically, the Indictment alleges that Southern Union's storage of mercury was in violation of U.S.C. § 6928(d)(2)(A) and 18 U.S.C. § 2 because the mercury was stored without a permit issued pursuant to RCRA. *See* Indictment at ¶ 29.[3] Like the Amended Complaint, the Indictment

---

[1] Although not in plaintiffs Amended Complaint, following the discovery of the mercury at the apartment complex in late 2004, Southern Union spent more than $6 million cleaning the apartment complex, replacing the residents' personal property, temporarily relocating the residents to alternative housing, providing stipends to the residents, and conducting environmental testing to ensure human health and safety to the satisfaction of all federal, state and local authorities, including the Rhode Island Department of Health ("RIDOH") and its Department of Environmental Management. Despite this clean bill of health, plaintiffs also seek the "full and complete" remediation of their properties, alleging that the remediation of plaintiffs' apartment complex was inadequate and negligently performed by Southern Union's co-defendant in this case, Clean Harbors Environmental Solutions, Inc. *See* Cplt. ¶¶ 29-32.

[2] The Indictment in the matter *United States v. Southern Union Company* is attached as Exhibit 1.

[3] The second and third counts of the Indictment concern an alleged failure to notify designated local and state officials of the mercury release immediately after it was discovered in purported violation of 42 U.S.C. § 11045(b)(4) and 18 U.S.C. § 2, as well as an additional RCRA count relating to the alleged storage of mercury-containing gas regulators at the Tidewater facility, in purported violation of 42 U.S.C. § 6928(d)(2)(A) and 18 U.S.C. § 2. *See* Indictment at ¶¶ 35, 37.

alleges that "the Tidewater facility was in various states of disrepair, which included gaps in the perimeter fencing, extensive graffiti on the vacant buildings, broken windows and doors, and overgrown vegetation." Indictment at ¶ 18; *compare with* Cplt. at ¶¶ 9 & 22 (a)-(e). The Indictment further alleges – again, similar to the Amended Complaint – that Southern Union was aware of attempted break-ins at the Tidewater facility but failed to adequately address the safety concerns prior to the break-in by Smith and Carberry that precipitated the spillage. *Compare* Indictment at ¶¶ 19-24 *with* Cplt. at ¶¶ 9-12. The Indictment further contends that Southern Union failed to notify immediately federal authorities regarding the mercury release – a claim repeated by plaintiffs in this case in their Rule 16 statement.

On October 29, 2007, Southern Union was arraigned on the indictment and an initial December 20, 2007 trial date was set.[4] Further, the government has made an initial production of materials pursuant to Rule 16 of the Federal Rules of Criminal Procedure and has identified twenty-nine current or former employees of Southern Union who have provided testimony or interviews to the government relating to the allegations in the Indictment. Many of these same current or former employees will no doubt be the target of discovery in the civil matter as well.

On October 17, 2007, one day after the Indictment was returned, this Court held a Rule 16 Conference in this case and set a discovery closure date of December 1, 2008. On October 25, 2007, plaintiffs noticed the deposition of Robert Vanderslice of RIDOH, and propounded their first set of written discovery. Because Southern Union anticipated the filing of this motion, plaintiffs agreed to hold discovery in abeyance until this motion is resolved.

[4] On January 29, 2008, the Court granted Southern Union’s motion to enlarge dates set in the arraignment and pre-trial order. A copy of the Order is attached as Exhibit 2. No trial date has been set, but Southern Union expects that a date will be set following the time set by the Court to file pre-trial motions and the Court’s disposition of those motions.

## ARGUMENT

This Court should stay plaintiffs' civil action against Southern Union. The subject matter of the Indictment and the claims in this case are substantially similar. The criminal and civil actions concern the same sequence of events, the same witnesses, the same documents, and many of the same expert issues. Indeed, plaintiffs' attorney has candidly informed the Court and Southern Union that he intends to rely on the alleged crimes in the Indictment to prove his claims in this case. Permitting both matters to proceed concurrently will impair Southern Union's ability to defend the criminal action where it faces substantial fines (the government contends the fines could reach $66,000,000) and the other significant and serious ramifications of a criminal conviction. Southern Union should not be forced to defend this action with one eye on how the discovery could impact its defense in the criminal action. Furthermore, in light of the strong parallel between the civil and criminal matter, resolution of the criminal proceedings may well obviate contentions in the civil action and dispense with the need for certain discovery. Thus, in the interests of justice and efficiency, this Court should grant Southern Union's motion.

### A. The Legal Standard

It is well settled that a court has the authority to stay an action pending the outcome of a criminal proceeding. *See Mainelli v. United States*, 611 F. Supp. 606, 615 (D.R.I. 1985); *see also Kashi v. Grastsos*, 790 F.2d 1050, 1058 (2d Cir. 1986) ("[A] court may decide in its discretion to stay civil proceedings . . . when the interests of justice seem . . . to require such action"). Indeed, "a court always has discretion to stay civil proceedings where it finds that the prejudice to a criminal defendant's rights warrants such action." *Mainelli*, 611 F. Supp. at 615 (citation omitted). "The strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend

a civil or administrative action involving the same matter." *S.E.C. v. Dresser Indus.*, 628 F.2d 1368, 1375-76 (D.C. Cir. 1980)); *see also United States v. A Certain Parcel of Land*, 781 F. Supp. 830, 834 (D.N.H. 1992) (granting stay of civil proceedings).

As the First Circuit has recognized in *Microfinancial, Inc. v. Premier Holidays Inter., Inc.*, where, as here, the facts underlying the criminal case overlap with those of the civil case, a stay of the civil proceeding may be appropriate. *See* 385 F.3d 72, 77 (1st Cir. 2004) (citations omitted).[5] In considering whether to grant such a stay, the *Microfinancial* Court set forth seven factors to consider: (1) the interest of the plaintiff in a expeditious resolution of the civil case; (2) the hardship on the defendant from defending the civil and criminal case simultaneously; (3) the convenience of the civil and criminal courts; (4) the interest of third parties; (5) the public interest; (6) the good faith of the litigant in seeking the stay; and (7) the status of the cases. *See id*. at 78; *see also Digital Equip. Corp. v. Currie Enterprises*, 142 F.R.D. 8, 12 (D. Mass. 1991). Weighing all of the relevant factors, this Court should grant the requested stay.

**B. <u>The Factors Weigh in Favor of Granting a Stay.</u>**

1. *Plaintiffs Will Not Be Prejudiced By A Stay*.

To be sure, plaintiffs have an interest in the expeditious resolution of their civil action. *See, e.g., United Techs. Corp. v. Dean*, 906 F. Supp. 27, 28 (D. Mass. 1995) (recognizing interest in quick resolution but granting stay of testimonial discovery). Here, however, that interest will hardly be prejudiced by staying the civil matter – which is still in its beginning stages – until Southern Union's criminal case is resolved. *See*, *e.g.*, *Microfinancial*, 385 F.3d at 79 (noting as factors to be weighed that civil case had been pending for three years and was "on brink of trial"

---

[5] As demonstrated above, many of the facts which underlie the allegations of this case are almost identical to those alleged in the Indictment. Both this case and the criminal case are premised upon the allegations of improper storage of mercury at an allegedly insecure facility, without proper notice to state and federal authorities and without permits as required by RCRA.

at time motion to stay was brought). The criminal matter will have a definite and final ending, likely well before fact discovery is scheduled to close in the civil matter on December 1, 2008. *See, e.g.*, *United States v. Hugo Key and Son, Inc*., 672 F. Supp. 656, 659 (D.R.I. 1987) (noting importance that criminal matter has a “definite and final conclusion”). Moreover, there is no danger here of memories becoming stale since the government’s investigation regarding the security and upkeep at the Tidewater facility involves the same facts and circumstances plaintiffs will look to prove in their negligence claims. *See Digital Equip.*, 142 F.R.D. at 12; *compare* Indictment at ¶ 18 *with* Cplt. at ¶¶ 9 & 22 (a)-(e). Thus, a stay of discovery in this case until the trial of the parallel criminal case is complete will cause no prejudice to plaintiffs’ civil action. *See Trustees of Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mech. Inc.*, 866 F. Supp. 1134, 1139 (S.D.N.Y. 1995) (granting stay and observing that prejudice to plaintiff from a stay is reduced once an indictment has been filed since "the criminal case will likely be quickly resolved").[6] On the contrary, plaintiffs have already expressed an interest in waiting for the outcome of the criminal prosecution to determine whether it will result in findings plaintiffs can use in this action.

2. *Defendant Will Suffer Hardship if Forced to Defend Both Actions Simultaneously*.

Southern Union will suffer real and unnecessary prejudice if forced to defend both the civil and criminal matters simultaneously. That Southern Union is not merely a target of a criminal investigation but has been indicted for the alleged failure to provide adequate notice and

[6] Moreover, a stay of this case may ultimately benefit plaintiffs. For instance, through the course of the criminal case plaintiffs may obtain evidence, testimony and admissions that they may choose to use to their benefit in this case. Further, it is possible that waiting until the criminal proceeding is resolved will stream-line the scope of discovery necessary and the issues to be resolved in this case. In addition, plaintiffs have raised no issue here as to defendant’s financial ability to pay any eventual judgment. Thus, the potential prejudice from a defendant becoming “judgment proof” through delays is irrelevant in the case at bar. *See, e.g., Austin v. Unarco Indus., Inc.*, 705 F.2d 1, 5 (1st Cir. 1983) (discussing financial risk of waiting to prosecute civil case where defendants were financially strapped).

the alleged improper storage of mercury at the Tidewater facility further supports the issuance of a stay of this proceeding. Courts routinely draw a distinction between instances where the defendant in a civil proceeding is merely a target of a criminal investigation and may never face criminal charges, and situations, such as here, where the defendant in a civil case has already been indicted in a parallel criminal case. *See Microfinancial*, 385 F.3d at 79 n.3; *Dresser*, 628 F.2d at 1376; *see also In re Par Pharm., Inc. Sec. Litig.*, 133 F.R.D. 12, 13 (S.D.N.Y. 1990) ("The weight of authority in this Circuit indicates that courts will stay a civil proceeding when the criminal investigation has ripened into an indictment"); *cf. JHW Greentree Capital, L.P. v. Whittier Trust Co.*, 2005 WL 1705244, at *1 (S.D.N.Y. July 22, 2005) (noting that difference between being target of investigation and being indicted weighs significantly in balancing test).

Here, without a stay, Southern Union will be required to defend both actions concerning the same facts at the same time using the same witnesses, and in the civil case will have to provide answers to interrogatories, document requests, requests for admissions and deposition testimony. *See Mainelli*, 611 F. Supp. at 615; *Dean*, 906 F. Supp. at 29. Its current and former employees will have to do so as well. During the course of this discovery, the Plaintiffs may attempt to elicit from Southern Union and its current and former employees statements not obtained by the government during its grand jury investigation (which the government may claim are incriminating), and, consequently, it is possible that employees and former employees might have to face the difficult choice of invoking their Fifth Amendment privilege or inviting the government to make themselves a target of yet another criminal investigation. *See Dean*, 906 F. Supp. at 29 (recognizing importance of right against self-incrimination). Thus, the government may have an unfair opportunity, through the course of civil discovery in this case, to obtain incriminating statements and evidence that it failed to obtain during its grand jury

investigation.[7] *See, e.g.*, *Digital Equip.*, 142 F.R.D. at 13 (stating that "a party should not be allowed to make use of the liberal discovery procedures applicable to a civil suit to avoid the restrictions on criminal discovery") (internal quotations omitted).

Most importantly, simultaneous proceedings will force Southern Union repeatedly to make discovery decisions in this case – including decisions about whom to depose, what documents to seek, and what questions to ask – constrained by the crossover effects of those decisions on the criminal action. Accordingly, this factor weighs heavily in favor of granting the requested stay.

3. *Granting the Stay Will Lead to Efficient Case Management*.

The Court's convenience is "deserving of substantial weight." *Microfinancial*, 385 F.3d at 79. Here, granting the requested stay will enhance the court's convenience by avoiding numerous motions and the unnecessary duplication of discovery. *See, e.g.*, *Aetna Cas. & Surety Co. v. Kelly*, 889 F. Supp. 535, 541 (D.R.I. 1995) (Torres, J.) (granting in part motion to stay and recognizing risks of duplication of effort and inconsistent results in parallel piecemeal litigation). A stay will further aid in the "conservation of judicial resources and comprehensive disposition of litigation." *See id*. at 538 (internal citations and quotations omitted).

Here, resolution of the criminal proceeding may not only avoid duplicative discovery, but may also narrow the potential claims and defenses of the civil action. *See Dean*, 906 F. Supp. at 28 (noting that resolution of criminal matter may simplify discovery or otherwise narrow the issues); *see also Parker v. Dawson*, 2007 WL 2462677, at * 6 (E.D.N.Y. Aug. 27, 2007) (same). Indeed, as this Court observed in *Kelly*, resolving certain issues before "the underlying litigation runs its course may promote wise judicial administration by assisting the parties in evaluating

[7] Similarly, through the course of civil discovery, Southern Union may reveal aspects of its intended strategy for the defense of the criminal case, further prejudicing Southern Union. *See Dean*, 906 F. Supp. at 28.

their respective positions for settlement purposes." *Kelly*, 889 F. Supp. at 543. Here, those issues – namely, the security and upkeep at the Tiverton facility and the reasonableness of defendants' notice – will be addressed in the criminal matter. Thus, in this case, resolving those underlying issues of potential criminal conduct first will undoubtedly assist the parties and this Court in an efficient resolution of the civil action. Indeed, the resolution of the criminal case could well lead to a resolution or settlement of this case.

4. *The Public Interest.*

The public's interest also militates in favor of granting a stay. As courts have recognized, the public has an interest "in both the prompt resolution of civil cases as well as the fair prosecution of criminal cases." *Digital Equip.*, 142 F.R.D. at 14; *see Parker*, 2007 WL 2462677, at * 7 (same). Of these two interests, public policy gives priority to the public's interest in fair prosecutions. *See Hugo Key*, 672 F. Supp. at 658; *see also Javier H. v. Garcia-Botello*, 218 F.R.D. 72, 75 (W.D.N.Y. 2003) (granting stay of discovery and finding public's interest in "integrity of the criminal case" entitled to precedence over civil litigation) (citations omitted). Indeed, a "trial judge should give substantial weight" to such priority "in balancing the policy against the right of a civil litigant to a reasonably prompt determination of his civil claims." *Hugo Key*, 672 F. Supp. at 658 (quoting *Driver v. Helms*, 402 F. Supp. 683, 685 (D.R.I. 1975)).

Here, the public's interest in the prompt resolution of the criminal case outweighs the interest in the expeditious resolution of the civil matter. Plaintiffs seek damages for their displacement and discomfort while Southern Union remediated the contamination. *See* Plaintiffs' Rule 16 Statement at 2. This interest is not as substantial as the public's interest in a fair trial for Southern Union. *See, e.g., Hugo Key*, 672 F. Supp. at 658; *Garcia-Botello*, 218 F.R.D. at 75. Any delay in the civil proceedings that might arise from the granting of a stay –

and it is not at all clear that one will in fact arise – is outweighed by the public's interest in the integrity of the criminal case. Further, given the fact that the criminal proceeding will be resolved promptly, the delay in the civil action will not be substantial. Thus, this factor also supports the motion.

5. *Southern Union Has Moved for a Stay in Good Faith.*

Southern Union has not unreasonably delayed bringing this motion nor dragged its heels in the civil matter. Instead, Southern Union in good faith seeks to protect its interests, and the interests of its employees and former employees, against being forced to provide both criminal and civil evidence simultaneously. Accordingly, this factor weighs in favor of granting the stay.

Courts look unfavorably on long delays between the time of an indictment and the filing of a motion to stay parallel civil proceedings. *See In re Anderson*, 349 B.R. 448, 451 (E.D. Va. 2006) (denying stay where defendant waited nine months after indictment to seek a stay); *Admiral Ins. Co. v. Federal Sec.*, 1996 U.S. Dist. LEXIS 3639 (N.D. Ill. 1996) (noting ten month delay after initiation of criminal and civil matter in denying motion to stay). Similarly, where a party takes advantage of broad civil discovery so as to avoid restrictions on criminal discovery, then later seeks a stay of civil discovery for strategic purposes, courts view a subsequent motion to stay with a jaundiced eye. *See Digital Equip.*, 142 F.R.D. at 13; *Hugo Key*, 672 F. Supp. 656, 658 (D.R.I. 1987); *see also Larouche Campaign v. F.B.I.*, 106 F.R.D. 500, 501 (D. Mass. 1985).

Here, neither consideration applies. Southern Union makes this motion approximately four months after being indicted. Further, although Southern Union might itself gain great advantage from using broad civil discovery in its defense of the Indictment – including an advantage by obtaining deposition testimony from the twenty-nine witnesses (or others) identified in the Government's Rule 16 Disclosure Statement – Southern Union has taken no

affirmative discovery and instead has demonstrated good faith by seeking a stay of this parallel civil matter.

6. *The Status of the Cases Favors Granting the Stay*.

Finally, the status of the cases strongly favors granting Southern Union's motion. Courts have recognized the significance of the factors at work here, namely the overlap between the two parallel cases, *see Dresser*, 628 F.2d at 1376, discovery that is in its beginning stages in the civil action, *see Microfinancial*, 385 F.3d at 79, and the fact that the indictment was issued a month ago. *See Garcia-Botello*, 218 F.R.D. at 75. Combined, these factors weigh heavily in favor of granting the requested stay.

**CONCLUSION**

For the foregoing reasons, defendant respectfully seeks a stay of these proceedings until the resolution of the case entitled *United States of America v. Southern Union Company*, CR 07-134T (D.R.I.).

NEW ENGLAND GAS COMPANY, INC.

*/s/* Gerald J. Petros

Gerald J. Petros (#2931)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
Tel. (401) 274-2000
Fax (401) 277-9600
gpetros@haslaw.com

Mark P. Dolan (#3280)
Rice, Dolan & Kershaw
72 Pine Street, Suite 300
Providence, RI 02903
(401) 272-8800

Dated: February 22, 2008

**CERTIFICATION**

To:

Mark W. Dana, Esq.
Robert A. D'Amico, Esq.
Patrick F. Dowling, Esq.
536 Atwells Avenue
Providence, RI 02909

Michael Smith, Esq.
Bonner Kiernan Trebach & Crociata LLP
55 Pine Street
Providence, RI 02903

I hereby certify that on February 22, 2008, a copy of the foregoing Motion to Stay was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Gerald J. Petros

*873744v1 (14015/127589)*