**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| ANGEL ARRIAGA, et al.,<br>Plaintiffs, | : | |
| vs. | : | C.A. NO. 06-045T |
| NEW ENGLAND GAS COMPANY, an Unincorporated Division of SOUTHERN UNION COMPANY, CLEAN HARBORS ENVIRONMENTAL SERVICES, JASON SMITH and STEPHEN CARBERRY,<br>Defendants. | : | |

***PLAINTIFFS' OBJECTION TO DEFENDANT, NEW ENGLAND GAS COMPANY'S, MOTION TO STAY***

Now come the Plaintiffs, by and through counsel, and hereby object to Defendant, New England Gas Company's, Motion to Stay. In support of said objection, Plaintiffs rely on the attached Memorandum of Law, and ask this Court to deny Defendant's Motion.

Plaintiffs,
By Their Attorneys:

***D'AMICO • BURCHFIELD, LLP***

/s/ Mark W. Dana, Esq.

/s/ Patrick Dowling, Jr., Esq.
Mark W. Dana, Esq. #4150
Patrick Dowling, Jr., Esq., #6863
536 Atwells Avenue
Providence, Rhode Island 02909
(401) 454-1212
(401) 454-1233 – fax

## *CERTIFICATION*

I hereby certify that on this 5th day of March, 2008, a true copy of the within Objection was filed electronically, and is available for viewing and downloading from the ECF system, and copies were sent to all counsel of records via regular mail.

***Mark P. Dolan, Esq.***
***RICE, DOLAN & KERSHAW***
***170 Westminster Street***
***Suite 900***
***Providence, RI 02903***

***Gerald J. Petros, Esq.***
***HINCKLEY, ALLEN & SNYDER, LLP***
***1500 Fleet Center***
***Providence, RI 02903***

***John A. Kiernan, Esq.***
***Dawn M. Neborsky, Esq.***
***Bonner Kiernan Trebach & Crociata, LLP***
***200 Portland Street, Suite 400***
***Boston, MA 02114***

/s/ Mark W. Dana
of D'AMICO • BURCHFIELD, LLP

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ANGEL ARRIAGA, et al.,
Plaintiffs,

vs. : C.A. NO. 06-045T

NEW ENGLAND GAS COMPANY, an Unincorporated Division of SOUTHERN UNION COMPANY, CLEAN HARBORS ENVIRONMENTAL SERVICES, JASON SMITH and STEPHEN CARBERRY,
Defendants.

***PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR OBJECTION TO DEFENDANT, NEW ENGLAND GAS COMPANY'S, MOTION TO STAY***

Plaintiffs submit this Memorandum of Law in support of their objection to Defendant, New England Gas Company's (hereinafter "NEGC"), Motion to Stay the within proceeding pending completion of the criminal matter filed within this Court under United States v. Southern Union Company, CR 07-134T. For the reasons set forth below, Plaintiffs object to said Motion to Stay and ask this Court to deny the same.

**STATEMENT OF FACTS**

In the Fall of 2004, mercury stored in the Tidewater Street Facility of NEGC was released in and around the facility and adjacent residential dwellings inhabited by the Plaintiffs. In January of 2006, Plaintiffs filed a civil complaint in Providence County Superior Court, alleging responsibility by NEGC, among others, for the release and resulting damages. NEGC removed the case to this Court and Plaintiffs' Motion to Remand was denied on April 16, 2007. On October 16, 2007, a federal grand jury returned an indictment in United States v. Southern Union Company, CR 07-134T, naming only the corporate entity as a defendant. The indictment

alleges certain criminal conduct stemming from the same storage of mercury at the Tidewater Street Facility of NEGC, which is at the center of Plaintiffs' Complaint herein.

On October 17, 2007, this Court held a Rule 16 Conference and set a discovery closure date of December 1, 2008. Plaintiffs commenced discovery on October 25, 2007 by way of propounding written discovery and noticing of a deposition. On November 5, 2007, NEGC, through counsel, communicated in writing, the expected filing within ten days of a Motion to Stay the within matter pending resolution of the aforementioned criminal case. See Exhibit 1. As a matter of courtesy and in consideration of the presented timeframe, Plaintiffs' counsel agreed to cancel the previously scheduled deposition and withhold demand for discovery responses, pending hearing on the Motion to Stay. NEGC failed to file any such motion up through the time of Settlement Conference on January 17, 2008. Without the benefit of any discovery, the parties did not engage in any meaningful settlement discussions.

On February 11, 2008, without having received discovery responses or a Motion to Stay, Plaintiffs' counsel filed a Motion to Compel discovery responses. Not until February 22, 2008, in excess of three months past the expected filing date presented in its November 5, 2007 correspondence, did NEGC file a Motion to Stay the within proceedings, until resolution of United States v. Southern Union Company, CR 07-134T. In support thereof, NEGC relies on the parallel between the within civil matter and the criminal case, asserting that the two "concern the same sequences of events, the same witnesses, the same documents, and many of the same expert issues." NEGC's Memorandum of Law (hereinafter "Memorandum") at 4. NEGC further asserts that prejudice to it will result from the concurrent travel of the civil and criminal matters and that the interests of justice and efficiency warrant granting the stay sought herein.

**STANDARD OF REVIEW**

The stay of the type sought by NEGC is within the authority of this Court to grant. See Driver v. Helms, 402 F. Supp. 683, 685 (R.I. 1975) (citing Landis v. North America Co., 299 U.S. 248 (1936)). However, this Court should grant such a stay "only in rare circumstances," and NEGC holds the burden "to make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which [it] prays will work damage to someone else." Id. (quoting Landis, 299 U.S. at 255). There is no inherent unfairness to NEGC in having to simultaneously defend both a civil and criminal proceeding grounded on the same underlying facts. See Mainelli v. United States, 611 F. Supp. 606, 615 (D.R.I. 1985); see also, Driver, 402 F. Supp. at 685 (noting numerous cases where courts have denied requests to stay civil proceedings during the travel of related criminal cases). The mere existence of a criminal indictment does not grant NEGC "a blank check to block all civil litigation on the same or related underlying subject matter." Driver, 402 F. Supp. at 685 (quoting Gordon v. Federal Deposit Inc. Corp., 427 F.2d 578, 580 (D.C. App. 1970)).

When ruling on a Motion to Stay, the reviewing Court must assess "the nature and substantiality of the injustices claimed on either side." General Dynamics Corp. v. Selb Manufacturing Co., 481 F.2d 1204, 1215 (8th Cir. 1973) (quoting Gordon, 247 F.2d. at 580). The determination requires the "highly nuanced" task by the Court to balance the competing interests on a fact specific basis and carefully review the particular circumstances of the matter before it. Microfinancial, Inc. v. Premier Holidays International, Inc., 385 F.3d 72, 78 (1st Cir. 2004). In weighing the respective interests in consideration of NEGC's Motion to Stay, this Court must consider seven factors:

1. The interests of the civil plaintiff in proceeding expeditiously with the civil litigation, including the avoidance of any prejudice to the plaintiff should a delay transpire;
2. The hardship to the defendant, including the burden placed upon [it] should the cases go forward in tandem;
3. The convenience of both the civil and criminal courts;
4. The interests of third parties;
5. The public interest;
6. The good faith of the litigants (or the absence of it); and
7. The status of the cases.

Id.

## ARGUMENT

### I. The interests of the civil plaintiff in proceeding expeditiously with the civil litigation, including the avoidance of any prejudice to the plaintiff should a delay transpire

As Defendant concedes, Plaintiffs have an interest in the timely resolution of their civil Complaint. See Memorandum at 5. Plaintiffs also have the right to a speedy discovery process. Digital Equipment Corp. v. Currie Enterprises, 142 F.R.D. 8, 10 (D. Mass. 1991). The mercury spill occurred in the Fall of 2004 and Plaintiffs filed a Complaint in Providence County Superior Court in January of 2006. Motions filed thereafter concerning jurisdiction were not resolved until Order of this Court dated April 16, 2007. Motion by NEGC challenging standing of Plaintiffs to bring certain causes of action was were not resolved until Order of this Court dated June 27, 2007. Said Order also provided twenty days for Plaintiffs to file an amended Complaint. Plaintiffs' filed an Amended Compliant on July 3, 2007 and NEGC's filed an Answer thereto on July 18, 2007. In total, the issues concerning jurisdiction and standing, while certainly valid issues, consumed the first eighteen months this matter was pending.

Any further delay in this matter will result in prejudice to Plaintiffs. NEGC asserts that there is "no danger here of memories becoming stale since the government's investigation

regarding security and upkeep of the Tidewater Facility involves the same facts and circumstances plaintiffs will look to prove in their negligence claims." Memorandum at 5. However, such a conclusionary statement fails to account for the memories of Plaintiffs as to the impact of the displacement upon them or the time sensitive relief sought by Plaintiffs for medical monitoring and further remediation. Completion of the criminal matter will not affect the pending matter as it relates to Co-Defendant, Clean Harbors, or the information to be solicited from non-parties. Commencing the discovery process forthwith is necessary so prevent prejudice to Plaintiffs, considering the number of depositions to be taken, the expert opinions to be sought, Plaintiffs' requested relief, and the number of involved parties to complicate scheduling,

## II. The hardship to the defendant, including the burden placed upon [it] should the cases go forward in tandem

NEGC presents the position that the mere existence of an indictment plays significantly in favor of granting the requested stay. In support thereof, NEGC cites to certain case law drawing a distinction between motions to stay filed pre and post indictment. See Memorandum at 7. While the principle presented by Defendant is correct on its face, NEGC fails to discuss the considerations made in drawing the distinction. In Microfinancial, the appellant challenging the denial of a motion to stay focused on the burden imposed upon the individual co-defendant's Fifth Amendment rights. Microfinancial, 385 F.3d at 778. The Court stated that "an unindicted defendant who argues that going forward with a civil proceeding will jeopardize his Fifth Amendment rights usually presents a much less robust case for such extraordinary relief." Id. at 79 (citing SEC v. Dresser Industries, Inc., 628 F.2d 1368, 1376 (D.C. Cir. 1980).

NEGC's attempt to draw a parallel between the cited cases and this matter fails on two fronts. First, a corporation has no Fifth Amendment privilege against self incrimination. United States v. Kordel, 397 U.S. 1, 8 (1970). Thus, the status of the indictment against NEGC is

immaterial for Fifth Amendment considerations as the corporate entity holds no rights. With respect to discovery, such as interrogatories and admissions, therein requiring affirmation by a corporate agent, "[o]nly in extreme cases, where no corporate agent can answer the propounded interrogatories without being subject to a 'real and appreciable risk' of self incrimination, should a protective order, pursuant to Fed. R. Civ. P. 26(c) be issued." General Dynamics, 481 F.2d at 1210. NEGC provides no information to support that no such agent is available.

Secondly, Defendant argues that "it is possible that employees and former employees might have to face the difficult choice of invoking their Fifth Amendment privilege or inviting the government to make themselves a target of yet another criminal investigation." Memorandum at 7. Yet, NEGC fails to acknowledge that "the contention that an actual or potential defendant in a criminal case should not even be put to the difficult choice of having to assert the privilege in a related civil cases was rejected in United States v. Kordel, 397 U.S. 1, 25 L. Ed. 2d 1, 90 S. Ct. 763 (1970)." Driver, 402 F.Supp. at 686. Moreover, NEGC cites no authority to support the position that it has standing to raise the Fifth Amendment rights of past or present employees as a basis to seek a stay.

Assuming NEGC's right to raise such issue for discussion purposes, the same fails to demonstrate any prejudice to NEGC. Allowing NEGC to hide behind potential Fifth Amendment privileges held by employees would allow the corporation to "improperly assert on its own behalf the personal privilege of its individual agents." Kordel, 397 U.S. at 8. Further, NEGC fails in total to speak of a real and appreciable risk of self incrimination of the noted individuals. NEGC produces no information to suggest that the risk of self incrimination is "substantial and real, and not merely trifling or imaginary, hazards of incrimination. The mere 'say-so' of the claimant does not of itself establish the hazard." Id. at 1212. Logically, all of the

twenty-nine current and former employees referenced by NEGC as participating in the criminal investigation have either waived their Fifth Amendment rights or have been granted immunity for said participation, further removing potential issues from the discovery process.

NEGC goes on to claim that government may have an unfair opportunity through civil discovery to obtain incriminating evidence not presented to the grand jury. NEGC cites to the decision in Digital Equipment Corp. for the position that "a party should not be allowed to make use of the liberal discovery procedures applicable to a civil suit to avoid restrictions on criminal discovery. Memorandum at 8. However, NEGC fails to draw attention to the fact that the government is not a party to this action. In addition, NEGC fails to identify a procedural mechanism by which the government would participate in the discovery process herein.

Setting aside the issue of the government's status in this matter for discussion, NEGC offers nothing more than speculation of discovery abuse. "Conclusory allegations of potential abuse or simply the opportunity for the plaintiff to exploit civil discovery are generally unavailing to support a motion for stay." Digital Equipment Corp., 142 F.R.D. at 15 (citing United States v. All Funds on Deposit, 767 F. Supp. 36, 42 (E.D.N.Y. 1991)). In total, NEGC has failed to present any "special circumstances that suggest bad faith or malicious governmental tactics," to support its position of potential "unfair opportunity" by the government. See Digital Equipment Corp., 142 F.R.D. at 15 (denying request to stay parallel civil proceeding absent showing government was acting in bad faith or using malicious tactics).

Even if NEGC demonstrated the availability of discovery by the government and presented specific information as to abuse, "there are safeguards available less restrictive than a stay of all proceedings, such as narrowly framed protective orders once discovery is under way." Driver, 402 F. Supp. at 686. Rather than a stay, "[j]udicial discretion and procedural flexibility

should be utilized to harmonize the conflicting rules and to prevent the rules and policies applicable to one suit from doing violence to those pertaining to the other." Campbell v. J.M. Eastland, 307 F.2d 478, 487 (5th Cir. 1962). Simply, should discovery issues arise, NEGC can raise the same to the Court on a case by case basis, and this matter "can proceed under court imposed orders that will restrict defendant from such discovery avenues as necessary to protect defendant's rights." General Dynamics, 481 F.2d at 1210.

**III. The convenience of both the civil and criminal courts**

Plaintiff's Complaint came upon this Court's docket in January of 2006, in excess of two years ago. Presently, discovery is just beginning. This Court has a vested interest in moving the matter towards resolution, which has been attempted through previously completed and currently scheduled settlement conferences. The settlement conference of January 17, 2008 was unsuccessful partly because the parties are without the necessary information to consider the strengths of the opposing parties' positions. Further delay in discovery will effectively forestall all efforts to move the within matter closer to resolution. As reasoned by the Court in Digital Equipment, "a policy of freely granting stays solely because a litigant is defending simultaneous multiple suits interferes with judicial administration." Digital Equipment Corp., 142 F.R.D. at 16 (internal citations omitted).

NEGC postures that the stay will have a positive effect by "avoiding numerous motions and unnecessary duplication of discovery." Memorandum at 8. NEGC relies on the decision of this Court in Aetna Causality & Surety Co., v. Kell, in support of its contention. Memorandum, at 8 (citing Aetna Causality & Surety Co., v. Kell, 889 F.Supp. 535 (D.R.I. 1995)). The Aetna case dealt with the issue of staying a Declaratory Judgment action when the same factual issues are subject of a pending state court case. In review of the request for a stay in Aetna, this Court

noted that "the claims of all parties in interest can be adjudicated satisfactorily in the underlying litigation." Aetna, 889 F. Supp. at 540. In the present matter, the only common party between the civil and criminal cases is NEGC. The factual issues in common relate only to NEGC's compliance with federal regulation in operating its Tidewater facility, which is material to just a portion of Plaintiff's Complaint. NEGC fails to delineate how anything more than nominal duplication of discovery will be avoided when neither Plaintiffs nor the Co-Defendant will participate in the discovery undertaken in the parallel criminal matter. As such, the duplicative efforts contemplated by the Court is Aetna, would be significantly less in the concurrent litigation herein.

Defendant further asserts that the resolution of the criminal case may narrow issues in this civil matter, benefiting the parties and this Court. Importantly, NEGC is correct in phrasing said assertion as a mere possibility. It can not be said with any degree of likelihood that the resolution of the criminal case will dispose of any issues in this matter. It is appropriate for this Court to reason along with the court in Digital Equipment, who denounced such argument. Specifically, the court stated "[a]lthough resolution of the criminal proceedings may possibly obviate contentions in this proceeding, this court finds it unrealistic to rely on fortuitous events to manage its docket." Digital Equipment Corp., 142 F.R.D. at 16 (internal citations omitted).

**IV. The interests of third parties**

NEGC's Motion to Stay fails to discuss the affect a stay will have on third parties. For the reasons previously stated, the interests of past or current employees should not be adversely affected by continuation of this matter concurrently with the criminal case. If an issue does arise, this Court can consider a specific inquiry when raised. Id. Co-Defendant, Clean Harbors, as

does each litigant, benefits from the timely resolution of litigation. Staying discovery will be adverse to the interests of Clean Harbors in this regard.

## V. The public interest

The court in Microfinancial noted that there exists a presumption that the public has an interest in the prompt resolution of civil cases. Microfinancial, 385 F.3d at 79, n.4. The public's interest "may often require proceeding in simultaneously on two fronts." Mainelli, 611 F. Supp. at 615. NEGC asserts that the public's interest in prompt resolution of the criminal case outweighs the interest in the expeditious resolution of the civil matter. Memorandum at 9. In support thereof, NEGC speaks only of Plaintiffs' prayer for compensation for displacement from their homes and concludes that this interest is outweighed by the public's interest in a fair trial. Id. NEGC only speculates upon how the criminal prosecution will become unfair to NEGC should the civil matter proceed concurrently. As discussed previously, NEGC has the right to seek protection from the Court should a specific portion of the civil discovery process provide an unfair advantage to the government. See Digital Equipment Corp., 142 F.R.D. at 14-15, n.11 (reviewing the "public interest" element of a stay request and concluding that "less drastic means than a stay can adequately protect the pertinent interest"). NEGC's argument further lacks merit when considering the other relief sought by Plaintiffs including medical monitoring and remediation. These public health issues must be deemed as compelling as the public's interest in a fair trial. With adequate safeguards available to protect the criminal process, the public interest consideration weighs in favor of denying the requested stay. See Driver, 402 F.2d at 686 (denying a request for a stay, the Court held "[m]oreover, if the danger alleged becomes more imminent as this case progresses, there are safeguards available less restrictive than a stay of all proceeding….").

## VI. The good faith of the litigants (or the absence of it)

Upon receipt of NEGC's correspondence dated November 5, 2007, Plaintiffs, through counsel, agreed to cancel a previously scheduled deposition of a state employee, and hold in abeyance, written discovery, pending hearing on NEGC's Motion to Stay. Said correspondence identified that the Motion was expected to be filed within 10 days. Plaintiffs continued, in good faith, to wait on arrival of said Motion, up through the settlement conference of January 17, 2008. After the conference, Plaintiffs' counsel waited in excess of three more weeks to receive said Motion upon representations by Counsel for NEGC that the filing of the Motion was imminent. Finally, on February 11, 2008, without having received any discovery responses or Motion to Stay, Plaintiffs' counsel filed a Motion to Compel Defendants' discovery responses. Not until February 22, 2008, more than three months past the expected filing date, and four months since the indictment, did NEGC file the pending Motion.

While the total time period may not be deemed long as compared to cases cited by NEGC, this Court should consider the representations by NEGC as to when the Motion was expected to be filed, and the good faith concessions made by Plaintiffs in response to said representations. NEGC fails to offer any compelling justification for the three month delay from the expected filing date. NEGC also fails to note that the Motion was not filed until ten days after Plaintiffs were forced to file a Motion to Compel discovery responses. In effect, NEGC availed itself to a three month stay on discovery by utilizing Plaintiffs' extended courtesy, premised on the timeframe presented in the correspondence of November 5, 2007. In considerations of the contemplated filing date and representations advising Plaintiffs of the same, NEGC can not be said to have acted entirely in good faith by securing a voluntary stay from Plaintiffs, but not filing the within motion until after Plaintiffs filing a Motion to Compel.

**VII. The status of the cases**

This matter is in excess of two years old, and discovery is at the beginning stage. Considering Plaintiffs' causes of action independent of the charged criminal conduct, the existence of a Co-Defendant, and many witnesses unrelated to the criminal matter, substantial discovery wholly apart from the parallel criminal case will be necessary. In denying a Motion to Stay of the same nature as NEGC's, the Court in Driver considered the status of the civil case and concluded "… the ultimate resolution of this case is still long off, and there is no need at this early stage of the litigation to stay all proceedings, many of which … may be completely unrelated to the criminal investigation." Driver, 402 F. Supp. at 686.

NEGC cites to the holding in Dresser to support its position that the overlap between parallel case warrants a stay. Memorandum at 11. However, NEGC fails to establish the substantial prejudice to result if the requested stay is not granted. As held in Dresser "[i]n the absence of substantial prejudice to the rights of the parties involved, such parallel proceedings are unobjectionable under our jurisprudence." Dresser, 628 F.2d at 1374. The fact that this matter is in excess of two years old and only at the early stages of discovery, warrants consideration in permitting discovery to continue uninterrupted. Should NEGC at any time raise a specific and valid contention as to prejudice to result from discovery in this matter, it may appeal to this Court for a less restrictive safeguard than a blanket stay as sought herein. As such, the equities of the parties and the judicial process dictate NEGC's Motion to Stay be denied.

**CONCLUSION**

While NEGC points to potential problems and injustices to result from civil discovery proceeding concurrently with the noted criminal prosecution, it fails to set forth any "specific circumstances" which differentiate this matter from any other civil proceeding associated with a

concurrent criminal case. The case law cited by NEGC is absolutely clear that a stay of the nature sought herein is the exception. The argument set forth by NEGC only speculates about potential issues, common to most concurrent proceedings of this type. Accepting these potential issues as a valid basis for a stay would make such stays routine and remove the need for this Court to engage in a "highly nuanced" evaluation of the competing interests. Simply, NEGC's argument fails to meet the significant burden required for obtaining a stay. Evaluating the competing interests herein dictates that NEGC's Motion to Stay be denied.

Plaintiffs,
By Their Attorneys:
***D'AMICO • BURCHFIELD, LLP***

/s/ Mark W. Dana, Esq.

/s/ Patrick Dowling, Jr., Esq.
Mark W. Dana, Esq. #4150
Patrick Dowling, Jr., Esq., #6863
536 Atwells Avenue
Providence, Rhode Island 02909
(401) 454-1212
(401) 454-1233 – fax

***CERTIFICATION***

I hereby certify that on this 5th day of March, 2008, a true copy of the within Memorandum was filed electronically, and is available for viewing and downloading from the ECF system, and copies were sent to all counsel of records via regular mail.

***Mark P. Dolan, Esq.***
***RICE, DOLAN & KERSHAW***
***170 Westminster Street***
***Suite 900***
***Providence, RI 02903***

***Gerald J. Petros, Esq.***
***HINCKLEY, ALLEN & SNYDER, LLP***
***1500 Fleet Center***
***Providence, RI 02903***

***John A. Kiernan, Esq.***
***Dawn M. Neborsky, Esq.***
***Bonner Kiernan Trebach & Crociata, LLP***
***200 Portland Street, Suite 400***
***Boston, MA 02114***

/s/ Mark W. Dana
of D'AMICO • BURCHFIELD, LLP