IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| * * * * * * * * * * * * * * * * | C.A. NO. 06-45T |
| ANGEL ARRIAGA, et al * | MAY 21, 2008 |
| VS. * | 10:00 A.M. |
| NEW ENGLAND GAS COMPANY, et al* | |
| * * * * * * * * * * * * * * * * | PROVIDENCE, RI |

BEFORE THE HONORABLE ERNEST C. TORRES,

SENIOR JUDGE

(Defendant's Motion to Stay)

FOR THE PLAINTIFFS:

MARK W. DANA, ESQ.
Law Office of Mark Dana, P.C.
536 Atwells Avenue
Providence, RI 02909

PATRICK F. DOWLING, JR., ESQ.
D'Amico & Birchfield, LLP
536 Atwells Avenue
Providence, RI 02909

FOR THE DEFENDANT,
NEW ENGLAND GAS CO:

GERALD J. PETROS, ESQ.
Hinckley, Allen & Snyder
50 Kennedy Plaza
Suite 1500
Providence, RI 02903

FOR THE DEFENDANT,
CLEAN HARBORS ENVIRONMENTAL:

DAWN M. NEBORSKY, ESQ.
Bonner Kiernan Trebach & Crociata, LLP
200 Portland Street
Boston, MA 02114

Court Reporter: Debra D. Lajoie, RPR, FCRR, CRI

Proceeding reported and produced by computer-aided stenography

21 MAY 2008--10:00 A.M.

THE COURT: Good morning.

THE CLERK: The case before the Court is Civil Matter 06-45T, Angel Arriaga, et al, vs. New England Gas Company, et al.

THE COURT: This case is here for consideration of the Defendant's motion for a stay until the criminal case against New England Gas is resolved. Mr. Petros, are you speaking for New England Gas?

MR. PETROS: Yes, Your Honor.

THE COURT: Okay.

MR. PETROS: Your Honor, this is New England Gas Company's motion for a stay pending completion of the parallel criminal action.

I think that both sides agree, Your Honor, that the appropriate standard and test is set forth in the First Circuit case, the Microfinancial case, MFI case, that Judge Selya wrote for the First Circuit, which sets forth the standard for determining when to stay proceedings in a civil action because of a parallel criminal action that is pending.

I think Judge Selya stated, and I think the case law bears out, that the determination is highly nuanced, which I take, Your Honor, as meaning that it is very much case-specific, it turns on the particular facts present in

each individual case.

While Judge Selya went on to state a seven-part test that both sides, I think, recite in their memos correctly, he did also state, and I will quote, that, "The touchstone, of course, is that a District Court's discretionary power to stay civil proceedings in deference to parallel criminal proceedings should be invoked when the interest of justice counsel in favor of such a course."

I think, Your Honor, that's a recognition that, while this seven-part test is there, that it is very much a discretionary issue that turns on interest of justice, as determined by the Trial Court, and there's no question that this Court has broad discretion either way in this type of determination.

Now, Your Honor, rather than mechanically go through all seven of the individual factors, you know, both parties, again, have briefed that, I'd like to focus on two and then answer any questions the Court may have about the other factors.

The two factors I'd like to focus on are the-- really the prejudice factors, the prejudice and hardship to the Defendant if both matters proceed simultaneously and the prejudice to the Plaintiff if the civil action is stayed. At least in my review of the cases, again, both sides have cited, those seem to be the sort of dominant factors in play

in most decisions rendered by courts.

Now, Your Honor, I'll speak first, if I may, about the prejudice to the Defendant here, to New England Gas Company, if both matters proceed simultaneously without a stay.

I think the best statement of that prejudice is actually not found in my papers but found in the decision by the D.C. Circuit in the Dressler case, which we-- I think both parties cited to the Court.

And, in a fairly comprehensive discussion of this issue, on Page-- at the bottom of Page 20 and then carrying over to Page 21, the Dressler case said this: "The strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter." And then, Judge, the case goes on to list the factors that I think are critical here.

The noncriminal proceeding, if not deferred, might undermine the party's Fifth Amendment privilege against self-incrimination, expand rights of criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b), expose the basis of the defense to the prosecution in advance of the criminal trial or otherwise prejudice the case.

Let me focus my comments on that standard, Your Honor, which I think is an important standard for the Court to consider here.

First of all, this is a case where the Defendant is under indictment. As I surveyed the cases cited before the Court, many of those cases, indeed, most of them, involve situations where a party is subject to Grand Jury proceedings but is not under indictment.

I think we are, to some extent, a rare case. And all the courts seem to acknowledge the strongest case for a stay when an indictment is actually present. That is certainly here.

Now, with respect to the particular risk involved, the prejudice involved in parallel proceedings, Your Honor, the first factor cited in this case and in many cases has to do with Fifth Amendment privileges. I acknowledge, Your Honor, obviously, the Gas Company is a corporation, does not have a Fifth Amendment right against self-incrimination here.

And while the employees of the Company, past and present, who might be deposed in this case if discovery goes forward, certainly potentially have those rights, I acknowledge that because it's not the corporation, they're individuals, that interest is not as strong here as it would be if I were defending an individual who was subject to

Fifth Amendment concerns. So I acknowledge that, Your Honor.

The interests are out there, but some of these parties have probably testified in front of the Grand Jury, others have been interviewed, so that interest is probably not as strong here as it would be in another case.

But the other interests, I think, are very much in play here, if I can address them.

Our Constitutional structure has established rules for discovery in criminal proceedings. And, as the Court refers to it here, they're set forth in Rule 16(b) and in the case law of the Federal Courts developed over many years.

There's no question that, in this circumstance, Your Honor, if discovery is allowed to go forward full bore in this case, there will be discovery that relates to the criminal matter. I don't think either side disputes the fact that there is a significant relationship between the two cases in terms of some of the underlying facts.

The Court has had an opportunity to consider both cases in a different context and is very much aware of the similarities.

The Plaintiffs in this case are relying on specifically some of the very counts of the indictment to prove their claim. They have candidly acknowledged to the

Court and have said in their papers that they'd like to proceed on a negligence per se basis and are hoping for findings in the criminal action that allow them to do so. So the relationship between the two cases is--

THE COURT: But that's just the reverse of what you're concerned about, though, isn't it? It is certainly possible that there could be findings made in the criminal case that could impact the civil case, which would be a reason for not staying the civil case, I would think.

MR. PETROS: It would be, Your Honor, in that context. I can't dispute it. But, obviously, one of the other things that courts acknowledge is that the-- that criminal matters have a certain priority because of what's at stake.

Now, because I'm a corporation here, my liberty's not at stake, my client's liberty is not at stake. But, obviously, the corporation is very much concerned about the criminal prosecution, the fines that might attach and the significant impact of a criminal conviction on a public corporation. So certainly, the criminal case is paramount both in terms of how courts view the two proceedings and in terms of how my client views it, Your Honor.

THE COURT: Well, I think that's right. But the question here is-- you're asking the Court to stay the civil case.

MR. PETROS: Yes, Your Honor.

THE COURT: And the question that, that involves is, how proceeding with the civil case would prejudice NEG in the criminal case.

Now, you said that the issues are the same, or at least many of the issues are the same, and I'd like you to expand on that a little bit.

The criminal indictment has three counts. Two counts relate to storage of mercury or mercury-containing products without a permit, and the third count charges a failure to report a spill.

MR. PETROS: Correct, Your Honor.

THE COURT: Now, my understanding is that the failure to report the spill is somewhat related to the subject of the civil case in that the spill was apparently caused by the individuals who broke in and stole the mercury, and that's what the spill-- that's what caused the spill.

But, in the civil case, whether or not NEG had a permit doesn't really seem to be an issue. I mean, I guess one of the arguments that the Plaintiffs are making in the civil case is that, that's per se evidence of negligence, failure to comply with the permit requirement. I suppose that's at least arguable.

But tell me a little more about why-- how these

issues are the same. It seems to me that there may be some overlap, but I don't see a great deal of overlap between the issue in the civil case as to whether NEG was negligent in failing to take proper precautions to ensure that people wouldn't break in and steal the mercury and the issue in the criminal case, which is whether they were storing the mercury without a permit and whether they failed to report the spill after it had occurred.

MR. PETROS: Let me address that issue, Your Honor.

First of all, in the criminal case, it is clear from the papers filed by the Government so far and the arguments we've had on discovery motions so far that the criminal case is as Your Honor described it, it has exactly the three counts that Your Honor described.

And the Government is consistently arguing that the security issues-- and I use that in the broader sense-- the security issues at the facility are going to be the basis for the Government's claim or evidence that somehow the mercury involved here was waste and not a commercial chemical product and, therefore, triggered the obligations of the Code of Federal Regulations, 40 CFR, Section 264, that requires a permit and all that goes along with that.

There's no question the Government has said that, Your Honor, not only in oral argument, but in their papers, that the whole security issue at the Tidewater facility is

the focus of the Government's prosecution here.

By the same context, the Plaintiffs in this case have made it clear--

THE COURT: Can you run that by me again?

MR. PETROS: Yes, Your Honor.

THE COURT: I have a little difficult following that theory, that the absence of security bears on whether or not this material was waste and, therefore, had to be-- required a permit?

MR. PETROS: That is exactly correct, Your Honor. And I want to be clear that we will argue, as a Defendant in that case, and have argued that those circumstances cannot and should not be used to determine whether or not the mercury stored at the facility was a commercial chemical product or a waste.

But the Government has maintained in their papers, not just in argument but in their papers, over and over again in response to-- I think there are five motions pending right now, Your Honor, maybe four that are pending, that the basis for their evidence that, that mercury was waste and not a commercial chemical product has to do with the broad context, specifically with the broad context of security at the Tidewater facility, or the lack thereof, as they would portray it. And I'd be happy to supply the Court with those papers.

THE COURT: So the lack of security, then, is being argued to be sort of an admission that this material was waste because, if it wasn't considered waste by NEG, they would have had more security? Is that the--

MR. PETROS: Or they would have treated it differently. They wouldn't have-- they would have had an armed guard or mended the fences or done other things that-- so they're arguing that is evidence of some kind of intent to treat it as waste, as opposed to a commercial chemical product.

The Plaintiffs in this case make the same allegations, and, indeed, Your Honor, in the statement of claims, the Rule 16 statement filed with the Court, they specifically cite as their first example of negligence in this case our failure to comply with the requirements that would have attached to a permit to store a hazardous waste, and they cite to you the Code of Federal Regulations, and I believe that's the same section that deals with the storage of hazardous waste, as the thing-- and they list the items that would have been required under such a permit, if, indeed, a permit was required.

THE COURT: So the permit-- obtaining a permit would require certain security precautions to be taken?

MR. PETROS: Yeah, the-- once-- you have to-- if you're storing-- if you're a TSD facility, you're storing

hazardous waste, you have to get a permit, and that permit has a list of requirements of things you have to do to maintain your status, and the Plaintiffs cite to those requirements and say, you didn't comply with those, Therefore, you're negligent per se.

THE COURT: But these are requirements dealing with the security to protect the material being stored?

MR. PETROS: 24-hour guard service and things like that, Your Honor.

THE COURT: Okay.

MR. PETROS: As a matter of fact, they point out 24-hour surveillance, a barrier completely surrounding the facility, means to continuously control entry, a clear warning sign and other items. It's in their Rule 16 statement.

Now, Your Honor, we will argue, as I mentioned, that the Government's contention that security measures somehow determine the nature of the mercury being held is wrong, and we will argue candidly, Your Honor, that the Plaintiffs' claim here that somehow they can prove negligence on the part of New England Gas Company by pointing to these factors is also wrong, but these are the contentions we have to deal with, both in the pending criminal matter and in the civil matter.

And I point them out because-- to make this point,

Your Honor: It's clear that the cases give great weight to the fact that, again, our Constitutional system and our Rules of Criminal Procedure lay out rules for discovery in criminal matters.

The Courts, I think, are properly concerned about a parallel civil proceeding, which would clearly allow for discovery that goes way beyond Rule 16(b). This Court is very aware of the fact that discovery in civil matters is very different from discovery in criminal matters.

Now, Your Honor, it could be a jump ball. I can't tell you today how that discovery would play out or how-- you know, who it would help and who it would hurt. But I think it's clear that the Courts have, in several situations, expressed great concern about discovery when a serious criminal matter is pending that goes well beyond 16(b).

And there's no question here, because of the overlap in issues, and that's the point I wanted to get to, because of the overlap in issues, that the discovery in this case, the liability discovery, Your Honor, if permitted to go forward, will very much overlap with the criminal proceeding and produce discovery that would go well beyond Rule 16(b).

The other factor that is cited in the Dresser or Dressler case, Your Honor-- I think it's the Dresser-- I'm

sorry, Your Honor. Dresser. There's no L in there. The Dresser case, the D.C. Circuit case-- is the fact that civil discovery will likely require the Gas Company to state and expose its defense on these very same issues in the civil case, and that is a factor that I think all of the Courts that have addressed it have identified as a very significant factor.

In the criminal case, the Government doesn't have the ability, I don't believe, Your Honor, to take these depositions or to propound interrogatories or to propound requests for admissions and say to the Gas Company, Tell us your defenses, Tell us the facts that support your defenses, State your contentions on these various issues and prepare for the case in that way.

In a civil case, as the Court knows, a party has a right to propound interrogatories, contention interrogatories, requests for admissions, they have a right to take a 30(b)(6) deposition and to get that kind of information.

And I think the Courts have appropriately said, in those circumstances, they do not want to expose a Defendant in a serious criminal matter to that type of discovery because it could seriously prejudice the Defendant's ability to defend the criminal matter.

So, particularly when there's an alternative that

does not result in substantial prejudice, the Courts will consider a stay. And we think that's the case here, Your Honor, for this reason: The criminal case is now scheduled for trial before Judge Smith. It's scheduled for September 22nd of this year. Your Honor has scheduled a discovery closure date of December 1st in this case before the Court.

We think, Your Honor, that the Court could stay at least the liability portion of discovery in this case, allow the parties-- allow the Defendant to defend the Criminal Action on September 22nd. The Government and the Gas Company have estimated the trial will last I believe a total of four weeks. That's their estimate. I suspect, under Judge Smith's careful stewardship, it will be less than four weeks. And then matters can proceed from there, I think, in terms of liability discovery in this case.

Now, I acknowledge, Your Honor, that doesn't leave a lot of time. October 22nd to December 1st is about a month and a half, but I think if the parties work hard and if the Court would consider a very short extension of that discovery schedule, the parties could complete their liability discovery fairly quickly following completion of the criminal trial and have this case ready for trial early in 2009.

Now, the other factor, the important factor the

Court has to consider, and it is an important factor, is prejudice to the Plaintiffs. Every Court that I've seen that balances this-- that does the balance required on this motion considers that as one of the factors.

What's the prejudice here? Your Honor, the gravamen of the Plaintiffs' claim here, their damages claim, is that they were inconvenienced by having to stay in a hotel from October 22nd of 2004, for anywhere from-- to the beginning of December to the end of December.

Now, I don't mean to trivialize that. Our Supreme Court, Rhode Island Supreme Court, in the Scituate Oil case, recognizes that, if there's liability as a compensable item of damages. I don't mean to say that there's no harm suffered if you're put out of your house for some period of time or, in this case, put out of your apartment. It's a legitimate concern.

But I describe it, Your Honor, for this reason: It's not as if these Plaintiffs, for example, have lost their house in a tornado and need to get the money to rebuild their house so they have a place to stay. These Plaintiffs were all able to move back in to the apartments within, I think, six to eight weeks. They all moved back in, if they wanted to. They're moving on with their lives. And we're talking about compensation, I think, at a fairly modest amount for that discomfort level.

So I don't think the Plaintiffs suffer substantial prejudice if the decision as to whether or not they are entitled to any damages at all for that item is delayed by just a short period of time, which is what the Defendant, I think, requests in this case.

So, I think, when you balance the potential prejudice to the Gas Company here in terms of really--

THE COURT: Is that all that's left of the damages claims in the case? I thought there was an issue at one time about whether the clean-up had been properly conducted or had been complete. There was some suggestion, at least, I thought at one point, as to whether some of the Plaintiffs had suffered adverse health effects. Are those no longer part of the case?

MR. PETROS: Your Honor, they are part of the case in this respect: The Plaintiffs have candidly told us that they are-- out of the 88 Plaintiffs, there is one family, I believe it's one mother and two children-- Mr. Dana can be more specific-- who are pressing any claims for medical monitoring. They apparently have measurable levels of mercury in their blood. He has the details. We don't have discovery on it yet. But only three of the 88 Plaintiffs, at this point, as I understand it, are going to press any kind of a claim for medical monitoring.

The other point Your Honor raises is, early on in

this case, indeed, while it was still in the State Courts, the Plaintiffs moved for injunctive relief before the case was removed to Federal Court. That was, I think, close to two years ago now, 18 months ago, whatever the time period is.

They have never renewed their request for injunctive relief, and that dealt, Your Honor, with the point the Court made, remed-- a contention that further remediation was still necessary at the apartments.

What we do know and what is undisputed is that DEM, the agency in charge of the clean-up at the apartments, went out not just once but twice, the second time at the Plaintiffs' request, and verified that those apartments are, indeed, safe, that the remediation was appropriately completed and that they are appropriate for habitation by both adults and children.

Now, I think the fact, Your Honor, that, that request for injunctive relief has never been raised again and the Plaintiffs have not sought that relief certainly, I think, speaks loudly to the question of whether or not there are, indeed, any issues remaining at the property itself.

So the Court is correct, there were claims for medical monitoring. My understanding is those claims are now down to three of the 88 Plaintiffs. And there was a claim for remediation, but I don't think it's a claim that

has been pressed in this litigation, at least so far. And given what DEM has determined, I don't think it could be fairly pressed in these circumstances. So I-- I'm sorry, Your Honor.

THE COURT: I was just going to ask, you've already indicated, I think, that you're not suggesting that discovery be stayed as to the damages parts of the case, which is understandable, since that would all be directed at the Plaintiffs.

But, as to the liability part of the case, I gather you're most concerned with discovery conducted of New England Gas. I don't know if there's any third party discovery that would bear on liability here. Is there, or is that a concern, also?

MR. PETROS: It is a concern, Your Honor. Let me identify both categories. The Court is correct, we are most concerned about contention interrogatories, a 30(b)(6) deposition or requests for admissions directed to the Company itself, given the parallel criminal proceeding. That is of paramount concern, and I think that concern implicates all of the factors identified in the Dresser case that I read earlier.

But, even with respect to third party witnesses, Your Honor, there is a category there that, also, I think, creates significant and legitimate concerns for the Company.

There are witnesses who have-- who are likely to be witnesses in the criminal trial, or at least potentially witnesses in the criminal trial. And depositions of those witnesses creates the other concern expressed in the Dresser case about discovery that is much broader than Rule 16(b) permits in the criminal context.

Perhaps some of those witnesses have been before the Grand Jury, perhaps some have not, but taking their depositions, creating additional sworn testimony, transcripts of that, that may conflict with Grand Jury testimony, it may be consistent with Grand Jury testimony, or it may be in addition to Grand Jury testimony, I think implicates the concern in the Dresser case about discovery well beyond Rule 16(b).

Now, as I candidly said to the Court, I can't sit here today and say that's going to help the Government or it's going to hurt the Gas Company because we don't know what's going to happen in those discovery proceedings.

But, again, I think that the overriding concern discussed by a number of Circuits and Federal District Courts is that we have a Constitutional process, we have a procedure in place to control discovery in criminal cases, and they are rightly concerned about a parallel proceeding that essentially blows open that process with results that nobody can really predict.

THE COURT: Well, as to third party witnesses, what would be discoverable in a deposition in the civil case that the Government couldn't obtain by bringing the third party in to testify before the Grand Jury?

MR. PETROS: Your Honor, to my knowledge, I suspect that the Government could ask most of the same questions if they brought a witness in before the Grand Jury.

But I think the point here is that there may be witnesses the Government didn't bring in, there may be questions the Government didn't ask, there may be documents the Government didn't seek, there may be significant information that could weigh on the criminal matter. And it's very hard, it's impossible for me to predict today what those questions may be, who those witnesses may be and what the implications of the testimony may be.

So, again, I fall back to the concern that we're short-circuiting the Rule 16(b) process and opening up a whole area that could result, potentially, in substantial prejudice to the Company.

And, I think, under those circumstances, when an indictment is pending and when there's a clear overlap between the issues, the potential for prejudice is there and sufficient enough for Courts to say, if we can stay at least an aspect of the civil case for a relatively short period of time to permit the criminal case to run its course, then

it's appropriate to do so to avoid the prejudice that we're concerned about here.

So, for those reasons, Your Honor, we would ask the Court to stay the liability discovery in the civil action.

THE COURT: All right. Mr. Dana?

MR. PETROS: Thank you, Your Honor.

MR. DANA: Thank you, Your Honor.

The first point I would like to make, Your Honor, is as it relates to any prejudice to this Defendant, in reviewing what's in the docket sheet on the motions in limine before Judge Smith, it's become abundantly clear that it is New England Gas' position that there should be nothing before the jury in that case on the issue of the spill itself-- they have filed that motion-- or the security of the Tidewater facility.

They come in today and suggest that these cases are so intertwined, that there has to be a stay.

THE COURT: Well, has their motion been decided, the motion to exclude, the motion in limine, has that been--

MR. DANA: They have not been. And I understand that, Your Honor. But the point of the Defendant suggesting that they are that intertwined on the liability side of this case is not necessarily the argument they're making on the criminal side.

And, although I understand that, for purposes of

determining if this case should be stayed, I think that's significant because all of what Mr. Petros has indicated to the Court, as it relates to whether or not there is prejudice, is, with all due respect, and I have great respect for him, but it is an unknown. He acknowledges that we don't know the implications.

It could very well be, if those motions in limine are denied and there's evidence that goes before that jury in that case, that, on the civil side, he may be able to utilize some of that information. And because we don't know, he can't say that his client is prejudiced as a result of this.

He asserted the Fifth Amendment issues. I think they're nonissues. Clearly, under our Supreme Court, there is just no indication that New England Gas would have standing to assert Fifth Amendment privileges on third parties.

And, for those reasons, I fail to see, and I fail to see it in the reply memo, I fail to see those actual tangible issues of prejudice here in argument.

The right of the Plaintiff to, in fact, have a speedy discovery process is clearly replete throughout all of the case law. And I might add that, in this District, Judge Pettine, in both the Mianelli case and the Driver case, said the Defendant, under these circumstances, does

not get a blank check and stay all of the proceedings merely because there's a pending criminal action. And that's been stated, as well, in the Microfinancial case.

Mr. Petros cites the Dresser case. The civil side of that case was an SEC case, so what the Court was mostly concerned about in that case is circumventing the Grand Jury process by getting all of these subpoenas in the civil side, and the same, in effect, Plaintiff, the SEC, would have all of that information without need for any examination in a Grand Jury and utilize it, a legitimate concern, but certainly not something that we have here.

We have here a wholly separate set of Plaintiffs who have been harmed as a result of the conduct of New England Gas relative to not only nuisance cases, but there are, and Mr. Petros is right, some Plaintiffs who have elevated levels, consistent with objective evidence.

The issue of the fact that this case has been pending, removed in January of '06, it was filed, I think, in the State Court in December of '05, clearly has an issue on memory of any witness. Most recently, last March, we took the deposition, finally, of Dr. Vanderslice on various issues relating to levels and what the reoccupancy level would be. And that deposition transcript has numerous instances where the doctor says, "I simply can't remember. I don't recall."

THE COURT: Who is Dr. Vanderslice?

MR. DANA: Dr. Vanderslice is the doctor at the Department of Health who determined the reoccupancy level for the people at Lawn Terrace, looked at the documents, looked at what the levels were and made a determination, okay, is the level going to be 200, 300, 1,000 nanograms per cubic meter of air to allow them back in? We had taken his deposition, and, again, there are several instances in there where he simply could not remember.

In addition, Your Honor, to suggest that it's-- that these claims are not substantial, as it relates to these Plaintiffs, I think is unwarranted. These people remain concerned, but even beyond their concern, they were displaced for some period of time, and I think they have the right to a speedy discovery process to determine the liability of New England Gas.

THE COURT: What discovery is it that you wish to do, Mr. Dana?

MR. DANA: I wish to take discovery on the-- primarily, Your Honor, on the issue of the Tidewater facility. The defense to this matter is that, that was a secured facility and that there were no concerns with anybody getting in to that facility.

And I should add that our Rule 16(b) statement was drafted long before there was any indictment in this case,

and, obviously, as was the complaint.

There is indication, not only within the indictment, but within our complaint that there had been previous instances of people breaking in to that facility, and that information was, in fact, logged. I'd like that information. I'd like to be able to start the discovery process on the liability issue as to whether or not that facility was secured and how was it secured, and, in fact, was mercury kept in kiddie pools, was it kept in the locker of a former employee, was it kept in paint cans? Where was it brought to? Was it truly a reclamation program, which has significant bearing on the defense in this case, or was it waste? So, yeah, those are the primary issues I'm--

THE COURT: All right. From your description, it sounds like most of the liability discovery you'd want to be doing would be directed at New England Gas itself-- is it-- no. Southern Union? Is it Southern Union?

MR. PETROS: It's named as New England Gas Company. As the Court knows, that's a division, a former division.

THE COURT: All right. This discovery would be directed at New England Gas itself, is that right?

MR. DANA: As well as Clean Harbors and former employees of New England Gas, yes.

THE COURT: All right. So there are also third parties that you wish to conduct discovery of?

MR. DANA: Absolutely.

THE COURT: Okay. Now, as to the-- as to New England Gas, the discovery that will be directed at New England Gas, Mr. Petros' argument, his principal argument seems to me to be that, that would permit the expansion-- in effect, it would permit the expansion of the discovery in the criminal case beyond the bounds of what Rule 16(b) allows, which would be unfairly prejudicial to New England Gas.

How do you respond to that?

MR. DANA: If that were the case, every case would automatically be stayed because the realm of civil discovery is always going to be greater than the 16(b) discovery. I mean, it just is.

So, under that analysis, we would not be looking at the case law we're looking at because every case would be stayed under those circumstances.

But even if we come to--

THE COURT: Well, not necessarily. That would be one factor to consider, but--

MR. DANA: True.

THE COURT: -- it wouldn't necessarily mean an automatic stay.

MR. DANA: No. No. But, I mean, that's-- if that were the issue that we're dealing with and the Court raises

the question, I would suggest that, under those circumstances, the way both the criminal and the civil procedures work, it would be the situation. There are other factors, true, but focusing on this, there is going to be additional discovery.

We don't know if that additional discovery prejudices the Defendant, consistent with the case law. That was my point. We don't know. It may very well not. So at this point, it's speculation.

And it would be-- the vast majority of this discovery and these depositions would be of employees, and the proper course for Southern Union would be to make sure that those individuals have their own attorneys, paid for by Southern Union, as we've seen in other cases, and if those individuals then seek various forms of motions to quash or whatever, then they can present them.

But to suggest that merely because there may be discovery outgoing that may be utilized against the Defendant in the criminal case should not carry the day, and I think, under the case law, it doesn't carry the day.

The idea that the Defendant in this matter is going to be prejudiced just didn't-- has not come to fruition. It hasn't been shown in any manner at all that this Defendant, especially as an entity, especially without the Fifth Amendment right, would have any prejudice.

This case has been pending since January of '06. There were jurisdictional questions that were ultimately decided through August of '07. The Court had a conference in October. Within five business days, we filed our discovery. We filed a motion to compel. There was agreements between myself and Mr. Petros as to how we were going to address those. We've gone to two mediations. So the Plaintiff in this case has been trying to move forward.

We feel very strongly that-- and I should say to the Court that this is not an easy task, keeping this number of Plaintiffs in a position of understanding and acquiescing to what we have to do from a legal perspective. It only gets more difficult as each day passes.

THE COURT: Well, Mr. Petros also says that the prejudice to the Plaintiffs by granting the stay for a relatively limited period of time would not be very great. How do you respond to that argument?

MR. DANA: I think it would be great, and I think it is consistently great. And I don't think we can look at it very-- in a vacuum. I mean, if we were three months out from the complaint, I would tend to agree. But we're not. We're out-- we're two years out. And so each day magnifies as it gets more and more delayed.

These people, in fact, will lose memory. Witnesses will lose the ability to recount what, in fact, was placed

in bags, what was lost, where they went even, to some extent.

So, for those reasons, Your Honor, I would ask that the motion be denied.

MR. PETROS: Just very briefly, if I may, Your Honor?

THE COURT: All right. Very briefly.

MR. PETROS: Thank you.

Your Honor, four points very briefly. First of all, when you asked Mr. Dana what discovery he would take, I would submit that, if Terrence Donnelly, the Assistant U.S. Attorney prosecuting the case were standing here and were asked about the discovery he was interested in, he would have given exactly the same answer.

If the Court's able to look at the responses to our motions in limine, the Court will see that those are precisely the areas the Government is concerned about in the criminal prosecution. So I think that answer makes the overlap clear.

Second, this is the rare case. This is the rare case where there is a pending criminal action and a pending civil action with such a direct overlap. So it's not as if the rule would somehow-- a ruling here would somehow interfere with civil discovery in general. This is a very, very unusual case.

Third, the argument that the prejudice is speculative, that's wrong for two reasons, the prejudice to the Defendant. First, I don't think Mr. Dana could fairly urge the Court to adopt a position that you have to wait until the harm takes place and then it becomes nonspeculative. At that point, the stay becomes useless, the harm has already occurred. The stay, by definition, is a prophylactic measure entitled to prevent harm, so that fact that I--

THE COURT REPORTER: Could you repeat that, please?

MR. PETROS: Sure.

The stay is necessarily a prophylactic measure designed to prevent harm, and so to urge that the Court needs to wait until the harm occurs before the harm is sufficient to justify a stay really obliterates the remedy entirely.

And, beyond that, it is not speculative that, with respect to a 30(b)(6) deposition, or contention interrogatories, or requests for admissions, if they were done early in the case, before the criminal proceeding were done-- and I would note, Your Honor, in many civil cases, those measures by Court order can't take place until the end of the case anyway, until the Defendant has an opportunity to-- both sides complete discovery and then you ask those contention questions. That's sometimes ordered, as a matter

of course, in civil cases. But, certainly, that harm is real and immediate if those measures take place before the criminal prosecution is completed.

Thank you, Your Honor.

THE COURT: All right. Counsel, I think what this essentially comes down to, as both of you seem to recognize, is a question of evaluating and balancing the hardship and/or prejudice to each side, in other words, what hardship would be imposed on New England Gas if the case-- if this case is not stayed, if discovery in this case is not stayed, versus what hardship would be suffered by the Plaintiffs if the case is stayed.

Now, the principal argument, and I think a very good argument that Mr. Petros has made here, and this is a good reason why we have oral argument, because he has sort of changed my initial impression of how this should be decided by his argument. His principal argument is that the hardship to New England Gas by not granting the stay would be to, in effect, expand the scope of discovery in the criminal case by allowing the prosecutor to have access to information that otherwise would be unavailable beyond the scope of Rule 16(b). And so that's-- I think that is the key question, insofar as New England Gas' argument is concerned.

As far as the prejudice to the Plaintiffs is

concerned, this case has been pending for a while, it started in the State Court, was removed here, and, apparently, from reviewing the file, the Plaintiffs have been trying to get some discovery for some time and postponed it because they were told there would be a motion to stay, and so they deferred pursuing it.

Now, we're at a point now where the delay-- any delay to a Plaintiff, or Plaintiffs, is somewhat prejudicial. The degree of prejudice obviously varies depending on the circumstances and the length of the delay.

Here, we're talking about-- if we stayed all discovery, we would be talking about a delay of from now until the criminal case is likely to be resolved, which would be roughly five months, I guess, something like that. It's-- on the scale of prejudice, I suppose it's not something insignificant, but it's not something at the top of the scale either.

Now, when I look at the prejudice that would accrue to New England Gas by not granting the stay, I think a distinction has to be drawn as to the type of discovery we're talking about. First of all, as Mr. Petros has indicated, certainly discovery on damages issues would not in any way prejudice New England Gas, mainly because the discovery on the damages issues would be directed at the Plaintiffs, not at New England Gas.

But then, when we look at the liability discovery, it seems to me that a distinction needs to be drawn between discovery directed at New England Gas itself and what I would refer to, for lack of a better term, as discovery involving third parties.

Now, again, bearing in mind that the bench mark here or the source of the prejudice to New England Gas is expanding the scope of discovery beyond what would otherwise be available to the prosecution in the criminal case, certainly, in the criminal case, the prosecution could not conduct discovery directly of New England Gas. They couldn't propound contention interrogatories, they couldn't conduct 30(b)(6) depositions, they couldn't do a lot of things which would be prohibited by Rule 16-- or I should say, not prohibited, but not allowed by Rule 16.

On the other hand, when we talk about third party discovery, there would be no expansion of the criminal discovery process that I can see by allowing discovery in this case to go forward with respect to third party Defendants because the prosecutor could summon those individuals before the Grand Jury and could question them to his heart's content on whatever issues might be relevant to the criminal prosecution. So I don't really see that, that's a consideration, insofar as third party discovery is concerned.

Now, the only argument that I understood Mr. Petros to make in that connection is that maybe, in the civil case, counsel might be I don't know if you want to call it more creative, more thorough or might inquire in to things that perhaps didn't occur to the prosecutor in the criminal case, but I don't think that, that's a basis for staying discovery involving third parties.

First of all, it's speculative. I don't know whether there would be inquiries made in the civil depositions that were not actually made in the criminal case before the Grand Jury or wouldn't have occurred to the prosecutor, but that doesn't seem to me to have anything to do with expanding the scope of discovery in the criminal case.

So I'm going to grant the motion for a stay, insofar as discovery directed against New England Gas is concerned. But I will deny the motion for a stay, insofar as third party-- discovery involving third parties is concerned.

And, as far as New England Gas is concerned, once the criminal case is decided, obviously, there's no need for further-- for continuing the stay, and-- well, I'll make that clear right now. I'll say the stay is granted as to discovery of New England Gas until a verdict is returned in the criminal case.

All right. Court will be in recess.

MR. PETROS: Thank you, Your Honor.

MR. DANA: Thank you, Your Honor.

(The hearing was concluded at 10:52 a.m.)

C E R T I F I C A T I O N

I, Debra D. Lajoie, RPR-RMR-FCRR-CRI, do hereby certify that the foregoing pages are a true and accurate transcript of my stenographic notes in the above-entitled case.

/s/ Debra D. Lajoie

6/2/08